STATE, Respondent, v. DOMINICO POGLIANICH, Appellant.

[252 Pac. 177.]

CRIMINAL LAW — MOTION TO WITHDRAW PLEA OF GUILTY — SHOWING HELD SUFFICIENT.

1. On appeal from an order denying motion to vacate judgment and for permission to withdraw plea of guilty to first degree murder, supreme court need not pass on sufficiency of evidence only except in so far as bearing on question of whether

plea was freely and voluntarily entered with reasonable under-standing of rights and legal effect thereof.

2. The press of supposedly impending dire results of failure to plead guilty on mind of defendant is not of itself sufficient ground to deprive court of discretion in refusing to permit with-drawal of plea, unless it had effect of depriving defendant of his will-power, or so placed him in fear that he did not act freely and voluntarily.

3. Under showing by affidavits that defendant's plea of guilty to charge of first degree murder was not made voluntarily and understandingly, considered with record showing failure to comply with C. S., secs. 8858, 8862, 9023, 9024, 9032, 9037, relative to procedure on arraignment and in pronouncing judg-ment, trial court erred in refusing to permit withdrawal of plea.

APPEAL from the District Court of the Second Judicial District, for Clearwater County. Hon. Edgar C. Steele, Judge.

Appeal from a judgment of life imprisonment rendered on a plea of guilty to murder in the first degree, and from an order denying a motion to vacate the judgment and for permission to withdraw the plea of guilty and enter a plea of not guilty. *Reversed and remanded.*

Tannahill & Leeper, for Appellant.

A valid preliminary examination was essential to confer jurisdiction upon the district court, and any alleged waiver of a preliminary must have been knowingly and voluntarily made by the defendant with full knowledge of the conse-quences of his act, and after a strict compliance with all statutory requirements. (C. S., secs. 8816, 8743, 8744; sec. 8,

Publisher's Note.

2. Discretion of court in permitting withdrawal of plea of guilty, see notes in 8 Ann. Cas. 237; 16 Ann. Cas. 973; 20 A. L. R. 1445.

3. See 8 R. C. L. 111.

See Criminal Law, 16 C. J., sec. 728, p. 396, n. 88, 90; sec. 730, p. 397, n. 7; p. 398, n. 10; p. 399, n. 14; sec. 737, p. 401, n. 61. 17 C. J., sec. 3575, p. 229, n. 33.

art. 1, Const.; *In re Madison,* 36 Kan. 725, 14 Pac. 144; *People v. Napthaly,* 105 Cal. 641, 39 Pac. 29.)

The defendant must be allowed a reasonable time, not less than one day, to answer the indictment.   (C. S., sec. 8862.)

After a plea of guilty, the court must appoint a time for pronouncing judgment, which in case of felony must be at least two days after the verdict.   (C. S., sec. 9023.)

When a plea of guilty upon which a judgment of conviction is based is entered under such conditions as to indicate that the same was involuntary and in ignorance of its significance on the part of the defendant, or under conditions indicating menace, duress, fraud, oppression, or mistake, which deprived the plea of its voluntary character, particularly when there appears to be doubt as to the innocence or guilt of the defendant, it is an abuse of discretion not to permit withdrawal of the plea and to reinstate the action for a jury trial.   (*State v. Arnold,* 39 Ida. 589, 229 Pac. 748; *State v. Raponi,* 32 Ida. 368, 182 Pac. 855; *Howington v. State* (Okl. Cr.), 235 Pac. 931; *Mullen v. State* (Okl. Cr.), 230 Pac. 285; *Polk v. State* (Okl. Cr.), 224 Pac. 193; *People v. McCrory,* 41 Cal. 458; *People v. Scott,* 59 Cal. 341; *City of Salina v. Cooper,* 45 Kan. 12, 25 Pac. 233; *State v. Nicholas,* 46 Mont. 470, 128 Pac. 543; *Krolage v. People,* 224 Ill. 456, 8 Ann. Cas. 235, 79 N. E. 570; *State v. Stevenson,* 64 W. Va. 392, 62 S. E. 688, 19 L. R. A., N. S., 713; *State v. Cimini,* 53 Wash. 268, 101 Pac. 891; *People v. Miller,* 114 Cal. 10, 45 Pac. 986; *State v. Marasca,* 85 Conn. 509, 83 Atl. 635.)

"Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree."   (C. S., sec. 9024.)

"Where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view in aggravation or mitigation of the punishment, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."   (C. S., sec. 9036.)

These statutes are identical with those of California, whose courts have construed them as mandatory.   (*People v. Chew*

*Lan Ong,* 141 Cal. 550, 99 Am. St. 88, 75 Pac. 186; *People v. Bellen,* 180 Cal. 706, 182 Pac. 420; *People v. Paraskevopolis,* 42 Cal. App. 325, 183 Pac. 585.)

A. H. Conner, Attorney General, John W. Cramer, Assistant Attorney General, and Arthur S. Guerin, Jr., for Respondent.

In order to take advantage of a defect or irregularity in a preliminary examination a motion to set aside the information on the ground that the defendant has not been legally committed by a magistrate must be interposed before plea or trial. If such motion is not made the defendant is precluded from afterward making such objection. (*State v. Clark,* 4 Ida. 7, 35 Pac. 710; *People v. Bawden,* 90 Cal. 195, 27 Pac. 204.)

All presumptions are in favor of the regularity of the proceedings of courts of record, and in the absence of any showing to establish the fact as to whether or not a court has complied with the requirements of law, the presumption will at once arise that the law has been complied with. (*State v. Suttles,* 13 Ida. 88, 88 Pac. 238; *State v. Ricks,* 34 Ida. 122, 201 Pac. 827.)

Error will not be presumed but the record must affirmatively show the error complained of. (*State v. Dawson,* 40 Ida. 495, 235 Pac. 326; *State v. Abbott,* 38 Ida. 61, 213 Pac. 1024, 224 Pac. 791.)

There is no irregularity in the proceedings by reason of the fact that they were all had in one day. (*State v. Raponi,* 32 Ida. 368, 182 Pac. 855.)

The showing made by appellant is insufficient to support the contention of appellant that the court acted arbitrarily in refusing to permit the substitution of pleas. (*State v. Raponi, supra; State v. Arnold,* 39 Ida. 589, 229 Pac. 748; *State v. Peterson,* 42 Ida. 785, 248 Pac. 12.)

TAYLOR, J.—This appeal is from a judgment of life imprisonment rendered on a plea of guilty to murder in the first degree, and from an order denying a motion to vacate

the judgment and for permission to withdraw the plea of guilty and enter a plea of not guilty.

The homicide occurred February 15, 1926. Defendant was arrested at Pierce City and brought to Orofino that day. At 9:30 A. M., February 16th, at a preliminary examination in the probate court, he was bound over to the district court, the order reciting that he appeared in person and by his attorney, and waived a preliminary examination. At 10 o'clock A. M., an information charging murder in the first degree was filed in the district court, and the defendant arraigned. The court appointed an attorney for the defendant, and continued the matter to 2 P. M. of that day for plea. At 2 P. M., defendant entered a plea of guilty, and was immediately sentenced to life imprisonment, and the same afternoon was taken to Lewiston to await a traveling guard from the penitentiary. His present counsel were engaged in Lewiston on February 17th, and immediately prepared, and upon February 18th filed and served, the motion and showing in his behalf.

The defendant, as grounds for his motion, alleged that he had never had a preliminary hearing; that the alleged preliminary proceedings were void, for the reason that he was never advised as to his right to have an attorney, was not permitted the services of an attorney, and did not voluntarily and with full knowledge of the facts and the law waive a preliminary examination; that he was utterly ignorant and uninformed as to the meaning of a plea of guilty to a first degree murder charge, and had no knowledge as to the consequences thereof; that his waiver of a preliminary and plea of guilty were not voluntarily made, with an understanding and knowledge of the consequences thereof, but were secured by fraud, menace, duress and cruelty exercised against him by the prosecuting officers of the county, and while he was in a state of great fear, and after threats of hanging if he went to trial; that he had a good, valid and legal defense to said charge.

Defendant's affidavits set forth some of the facts and circumstances surrounding the homicide, alleging and tending

to prove that he acted in self-defense. They further allege:
That he had been subjected to mistreatment, threats and
bodily violence continued up until late in the evening before
his plea; that the prosecuting attorney and another attorney
unknown to him endeavored by such threats, constant pres-
sure and physical mistreatment, to break defendant down
and force him to confess and plead guilty to the charge of
first degree murder; "that part of said physical mistreat-
ment consisted in affiant's being thrown to the floor and
choked"; that they repeatedly told him that if he did not
plead guilty to first degree murder, he would be hanged, but
that if he did plead guilty he would get only life imprison-
ment.

That he was placed in jail for the rest of the night, and
did not sleep at all because of the worry, fear and terror
under which he was laboring; "that by reason of said facts
defendant became frightened, confused and overcome with
the terror of being hanged if he went to trial, and also was
in a stage of mental and physical collapse"; that while in
this condition, on the morning of February 16th, he was
taken before the probate court for preliminary examination,
and entered a plea of guilty to the charge of first degree
murder.

That he was immediately arraigned in the district court on
an information charging first degree murder; that the
court thereupon appointed as attorney for him a young and
inexperienced attorney without any previous practice in a
case of this or similar kind; that he knew nothing about this
attorney, and, knowing that the state had something to
do about his appointment, felt that he was against him;
that he did not have any opportunity to talk to this attor-
ney, and did not understand exactly what the situation was
in relation to the appointment.

That shortly before his plea at 2 o'clock he talked for a
brief time with him, but that the attorney made no inquiry
into and did not discuss the facts with him, and did not
inform him as to his rights or the seriousness of a plea
of guilty, but without any investigation of the facts or law,

advised and urged him to plead guilty, telling him that it was best for him to do so, and that it was dangerous for him to have a trial in view of the fact that he might be hanged.

That he was wholly ignorant of and knew nothing of court procedure, and considered all the proceedings, as a part of the same inquisition of the night before, in which he thought the officers had a right to interrogate him as they did, and laboring under the fright and physical reaction to the abuses which had theretofore been put upon him by the prosecuting officers, and without any competent advice based upon a knowledge of the law or investigation of the facts, he entered a plea of guilty.

Defendant denies making any statement voluntarily or knowingly as to the existence of any facts or circumstances indicating a premeditated murder by him, or any intention to plead guilty to a premeditated murder, but alleges that any such statements as were made were made in a state of mind when he was overcome with excitement and terror; that he believed he was only admitting the fact of the killing, and that the proceedings had not yet been completed, and that later on he would have an opportunity to present his side of the case to the court, that he would have a trial at which the facts would be discussed, that he would get a chance to tell the judge the facts, and that his interests would be properly cared for thereafter in some manner by a trial or other means of divulging the facts, and particularly that he was ignorant that by the plea he was foreclosed from giving any testimony in his own behalf; that neither the attorney appointed nor any other person ever advised him at any time of his legal rights; that his present counsel have made an investigation of the facts, and advised him that he had a good defense to the charge of first degree murder, and is not guilty thereof; and he swears that he is not guilty of first degree murder or any other crime.

His statement that if he had been allowed time to secure counsel he could have done so, or that his friends would have secured counsel for him, is supported by the fact that his present counsel were engaged on the 17th of February, and

immediately prepared, and on the 18th filed and served, the
showing in his behalf. Their affidavits support his showing
in reference to them. His statement that the "prosecuting
attorney has at all times attempted to hold him *incommuni-
cado*" is not denied by that officer.

Counter-affidavits were presented by the state, setting
forth at length a detailed statement of the contention of the
state as to the facts of the homicide, and an alleged con-
fession of the defendant, and denying the alleged use of
force, fraud, menace or duress. The state seeks to justify
the procedure and sentence upon the ground that defendant
was unquestionably guilty of murder in the first degree,
and that he fully understood the effect of, and freely and
voluntarily entered, a plea of guilty.

[1] This is not a trial. It is unnecessary and would be
improper for us to pass upon the sufficiency of the evidence
to establish murder in the first degree, or any lack of evi-
dence to reduce the offense to second degree murder or
manslaughter, or to pass upon the circumstances by which
the evidence of the defendant himself was secured with re-
lation to whether or not, upon a trial, this evidence could
or would be admissible, except in so far as all the facts
argue that the plea of defendant was or was not freely
and voluntarily entered, with a reasonable understanding
of his rights and of the legal effect of the plea, or that the
court reasonably exercised its discretion in refusing to per-
mit its withdrawal. Sufficient to say that there might be
presented the purported evidence and other evidence on
which a serious doubt of the guilt of the defendant, or of the
degree of the offense, might arise in the minds of reason-
able men.

The affidavit of the attorney appointed supports that of
defendant, and in many particulars adds materially to the
showing. He swears that he was advised by counsel for the
state to be present at the preliminary; that the defendant
was asked by the probate judge if he wanted an attorney,
and replied that he did; that the probate judge stated that
he was without authority to appoint anybody, and proceeded
with the preliminary; that he had no word with, and did

not appear or act for, defendant thereat.  This is not denied except for the recital in the order binding defendant over, of "defendant being in court and being represented by his attorney," and the sworn conclusion of the prosecuting attorney that this attorney "did appear as attorney for the defendant" at the preliminary.

He swears that he pleaded with the prosecuting officers to accept a plea of guilty in a lesser degree, but they refused; that he "objected to pleading the defendant guilty without a trial, but because of the constant pressure . . . . his judgment was overborne, and he consented to advise the defendant to plead guilty"; that he again tried to get these attorneys to agree to accept a plea of second degree murder, but they refused to accede to it, and one of them "held out before your affiant that unless the defendant promptly plead guilty to said murder charge, he was in danger of being hung"; that immediately prior to the plea the prosecuting attorney informed him "that the defendant was in grave danger of being lynched by a mob; that unless he pleaded guilty and accepted his sentence of life imprisonment, and was immediately removed from the county, the mob would lynch and kill him."

The prosecuting attorney swears that he told this young attorney that there was no such thing as second degree murder under the law of Idaho; that the defendant was charged with murder; and that the statutes had abolished the distinction between murder in the first degree and murder in the second degree; that under our present statutes, it was either murder or manslaughter; and that he would not change the charge because he was firmly convinced that the defendant was guilty of murder.  Why this advice or what its effect was, we do not know.  This court has affirmed convictions of second degree murder for offenses committed since any change in the law in relation to murder or manslaughter.

The affidavit of counsel appointed frankly shows that he had little if any opportunity to examine into the facts or law between the time of arraignment and plea; that his advice was based, as to both, almost wholly upon the state-

ments of the prosecuting officers, and should not be permitted to bear much weight against the defendant as representation by, or advice of, counsel. It tends to establish that he was overcome by the gravity of the situation, and added little if any other than an appearance to the proceedings. In fact, his advice could apparently only have added weight to any fear already in the mind of defendant. He swears further that the defendant appeared to be in a more or less dumb or dazed state of mind, and that he "was not in any mental condition to understand the nature of the proceedings taken against him," or the effect or import of this advice to plead guilty.

Defendant's contention that he pleaded in ignorance of the effect of his plea, and that he expected and believed that he would have a further opportunity in the way of a trial or other proceeding, to present the facts, is supported by the evidence of Judd, the deputy sheriff in whose custody he was placed to be taken to Lewiston, that "I told him that we would catch the afternoon train and go down to Lewiston, and he says, 'Do we have any more trial there?' He didn't seem to understand why we were going to Lewiston."

The sheriff swears that immediately before 2 o'clock, the time of the plea, the defendant broke down crying, so that when he was asked to bring him into court to make his plea, he asked the court to wait a few minutes until defendant could "straighten himself out before coming into court," and "as soon as possible, when it appeared that Dominico Poglianich had become able to enter the court and make his plea," he then took the defendant before the district judge.

Affiants on behalf of the state allege that at the start of the inquisition of which defendant complains, he was told that a charge of murder in the first degree would be placed against him; that the penalty, in case of conviction, was either life imprisonment or death by hanging; that he was advised that he was entitled to counsel or an attorney; and also that anything he might say during the examination would be used against him in a trial of his case, if he made any statement. Defendant denies that he was so advised.

While there is much contradiction in the affidavits, it appears well established that the defendant is an uneducated, ignorant man, neither able to read nor write except his own name; that on the evening of the killing, after having been brought by the sheriff from Pierce City to Orofino, he was, by order of the prosecuting attorney, brought to his office. There were present the prosecuting attorney and another attorney who happened to be in attendance at a term of court, the sheriff, a deputy sheriff, a newspaper reporter, and one Eaton, the only eye-witness to the homicide other than the defendant. This man, a friend of deceased, had at his request come with him to defendant's house carrying an ax, the possession of which and its use there became a matter of serious dispute in the examination upon the question of self-defense. This eye-witness was placed in an adjoining room with an open door between, where he could hear all that transpired but without being seen or his presence known by the defendant. He was then asked if he was willing to explain just what happened at the time of the shooting, and defendant "said in substance that he would tell all about it and would tell nothing but the truth." Immediately, the attorneys proceeded to quiz and cross-examine the defendant. During an examination lasting late into the night he was required to make, or did make, physical demonstration of what he stated to be the facts, in which and at which times he plainly and repeatedly asserted that he shot the deceased in self-defense. It is admitted that no less than seven times the defendant was accused of lying, the physical facts admitted by defendant being cited to him to establish the falsity of his claim of self-defense, followed by further catechizing and physical demonstrations. After considerable examination, Eaton was brought in the room to confront defendant, and related his version of the facts and circumstances even to the extent of declaring that Poglianich was lying. Next, after a conference, Eaton was sent into a closed room to talk to defendant alone for a period of time not definitely stated. No explanation is made of this procedure, nor any reason given for it or the purpose thereof, nor a word of what Eaton was told to do or say, or did do or say,

to defendant. Next, the prosecuting attorney spent some time in this closed room with defendant alone. He swears that he then and there told the defendant that he would be prosecuted for murder in the first degree; that he would do everything possible to convict him, because he "had been falsifying in the matter all the way through"; that if convicted, only one of two sentences could be imposed, either death or life imprisonment; that he repeated the story of the affair as related by Eaton, and secured from defendant a statement that it was true; that defendant began to cry, and he told him to brace up; that at this stage, defendant asked him to "protect him from the mob."

We cannot but infer from the affidavits on behalf of the state that defendant was handcuffed during all of the evening, from 7:30 or 8 o'clock until late at night, for they disclose that the sheriff handcuffed him at Pierce City, and that upon several occasions during the evening, when he asked for his tobacco, the sheriff assisted him in getting it out of his pocket, and on two occasions when he asked for it the prosecuting attorney assisted him in removing his handkerchief from his pocket so he could wipe away his tears.

Affidavits on behalf of the state deny any mistreatment, threats or bodily violence. It is a significant fact, however, that the defendant was in fear of a mob; that the prosecuting attorney himself swears that defendant asked him once during the inquisition to protect him from the mob, and the last thing when he was being taken away to jail at a late hour in the night, again asked him to see that he was not molested. What effect the prosecuting attorney's assurance might have had upon the mind of the defendant when he told him that he would be protected from mob violence is problematical. It did not free the prosecuting attorney and the sheriff, nor the district or probate judge, of the fear of mob violence, for the sheriff swears that he put on an extra guard over the jail that night "for the safety of his prisoner." The prosecuting attorney swears that he had heard rumors of the possibility of a mob coming to take the defendant, and that for this reason he insisted upon a plea

being entered on the afternoon of the 16th, and that he told
the attorney for defendant of this fear, and gave him this
as a reason for insisting that the plea be entered at 2
o'clock on the 16th, so that the defendant could be taken
to Lewiston and a safe place of incarceration. The court,
upon pronouncing sentence, declared the jail insecure, and
required the prosecuting attorney to prepare an order for
him to sign, and one for the probate judge also, for the
transfer of defendant ''at once'' to the Lewiston jail, and
this order was issued for the reason ''that the Clearwater
county jail was unsafe,'' and defendant was so transferred
at once. All of these officers seemed in actual fear that
defendant would be lynched, some of them even after sen-
tence.

It would seem from the whole showing that the entire pro-
ceeding was such as to impress upon the defendant and upon
the young counsel appointed to defend him, that he had his
choice between a plea of guilty with a possible life sentence,
or to be hanged by a mob or in due course of law.

The state now demands that the defendant, who swears
that he was as much or more impressed with fear than they
who were in no danger, and was thereby induced to enter
his plea of guilty, should have been and must have been
the only one under the circumstances not influenced by fear.
They demand of him a degree of perfection which Kipling,
in his ''If,'' set forth as some of the necessary attributes of
a Man when he said:

> "If you can keep your head when all about you
>     Are losing theirs and blaming it on you;
> If you can trust yourself when all men doubt you,
>     But make allowance for their doubting too:
>
> . . . .
>
> "If you can bear to hear the truth you've spoken
>     Twisted . . . . to make a trap for fools,
>
> . . . .
>
> "If you can force your heart and nerve and sinew
>     To serve your turn long after they are gone,
> And so hold on when there is nothing in you,
>
> . . . .
>
> " . . . . You'll be a Man, my son!"

Coupled with the claim that he was forced, through fear and menace and duress, to enter his plea of guilty, the defendant, with considerable show of verity, asserts that his legal rights were denied him; that his preliminary examination was void; that he was not advised of his right to counsel, or given an opportunity to secure competent counsel; and that, upon arraignment and plea, his statutory rights were ignored and denied him. The state meets this showing only by a recital of what transpired, and sworn conclusions that the defendant pleaded knowingly and voluntarily.

The affidavits show that attorneys on behalf of the state took it upon themselves to disclose to the district judge something of the facts and circumstances, to advise perhaps the appointment of a young attorney only admitted to practice in December of 1925, and to advise this young attorney that he would perhaps be appointed by the district court to defend the defendant, and advise him to attend the preliminary hearing. He swears that he did not represent the defendant at the preliminary, and told the probate judge so. The preliminary was held at 9:30 o'clock the morning of the 16th. At 10 o'clock an information was filed in the district court, and arraignment had.

C. S., sec. 8858, provides:

"If the defendant appears for arraignment without counsel he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel the court must assign counsel to defend him."

C. S., sec. 8862, provides that on arraignment if the defendant requires it, he must be allowed a reasonable time, not less than one day, to answer the indictment. The court neither advised defendant of his right to have nor asked him if he desired or was able to employ counsel, but on the instant assigned him counsel, and without any inquiry of defendant, accepting the suggestion of this summarily ap-

pointed counsel, fixed, at something after 10 o'clock, a time for plea at 2 o'clock on the same day.

From the adjournment until 2 o'clock, this young attorney had scant opportunity to advise the defendant, no opportunity to get at the real facts other than what the prosecuting officers told him they were. He did not inquire of defendant as to the facts, but advised him to plead guilty in the hope that he would receive a life sentence instead of the death penalty. He spent considerable of his time pleading with the prosecuting officers that they accept a plea of murder in the second degree.

C. S., sec. 9023, requires that, after a plea of guilty, the court must appoint a time for pronouncing judgment which, in case of felony, must be at least two days after the verdict if the court intend to remain in session so long; but if not, then at as remote a time as can reasonably be allowed. Yet we find from this record that the court, without the slightest compliance with C. S., sec. 9024, to determine the degree of the offense committed, and although later in pronouncing sentence he refers to "the facts as I have them detailed in this case" as justification for imposing a life sentence instead of the death penalty, which facts if received at all were not by testimony of witnesses examined in open court, the only way permitted by C. S., sec. 9037, without any inquiry thereunder, and without any compliance with C. S., sec. 9032, by informing the defendant of the nature of the indictment and of his plea, or asking him whether he had any legal cause to show why judgment should not be pronounced against him, summarily addressing apparently to counsel for defendant the remark, "You have no objection to sentence being pronounced at this time?" and receiving from counsel the answer, "No, I have not," immediately proceeded to pronounce upon the defendant a sentence of life imprisonment.

Counsel for defendant made no statement in court in his behalf until after sentence, when he stated, "I think in my mind it might be some degree of mistake on his part to

plead to first degree," and then proceeded at this late hour to give reasons for his doubt.

[2] The press of supposedly impending dire results of his failure so to plead on the mind of a defendant entering a plea of guilty, is not of itself sufficient ground to deprive a court of discretion in refusing to permit the withdrawal of such plea, unless it has had the effect of depriving the defendant of his will-power, or so placed him in fear that he acted from the fear imposed and not freely and voluntarily. On the other hand, it is not the duty of prosecuting officers to secure convictions at any hazard. Safeguards by constitutional provisions and statutory enactments are placed about a defendant to be accorded him by prosecuting officers and courts, and the defendant cannot be deprived of these rights and safeguards with impunity.

The court, in passing upon the motion to withdraw the plea, stated that he wished he had more time to consider the matter, but seemed pressed for time in order to render his decision before the departure of an afternoon train. We have had more and better opportunity to examine the record than was afforded the district judge.

[3] Perhaps no one of the many circumstances shown and relied upon would be, nor might many of them when disassociated from the others be, sufficient to warrant us in setting aside the discretion of the trial court. The defendant made a strong showing that he did not plead guilty voluntarily and understandingly. In addition to this, from the whole record it appears that statutory requirements were not complied with in some particulars in which the duty of the court is declared, and which have been held to be mandatory. (*State* v. *Allen*, 41 Wash. 63, 82 Pac. 1036.)

This court announced the rule in *State v. Raponi*, 32 Ida. 368, at 373, 182 Pac. 855, that the discretion to permit a plea of guilty should be withdrawn should be liberally exercised. In view of all the showing made, we are convinced that a liberal exercise of discretion should have prompted the lower court to permit the plea to be withdrawn, and that he erred in not doing so.

The judgment and order are reversed, and the cause remanded with instructions to permit the defendant to withdraw his plea of guilty.

Wm. E. Lee, C. J., and Budge, Givens and T. Bailey Lee, JJ., concur.