403 P.2d 597

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Robert Lee MARTINEZ, Defendant-Appellant.**

**No. 9647.**

Supreme Court of Idaho.

June 25, 1965.

Thomas A. Mitchell, Coeur d'Alene, for defendant-appellant.

**130**

Allan G. Shepard, Atty. Gen., and Thomas G. Nelson, Deputy Atty. Gen., Boise, Richard G. Magnuson, Pros. Atty., Wallace, for plaintiff-respondent.

TAYLOR, Justice.

On the evening of November 1, 1964, defendant (appellant), aged 22 years, in company with another boy, aged 17 years, and two girls, both aged 16 years, in defendant's car, drove to a secluded spot near Mullan, where a beer drinking and "necking" party ensued. The party lasted three or

four hours, during the latter part of which time the prosecutrix claimed she was raped by the defendant. Upon being returned to her home in Mullan she did not complain to her parents because she was afraid of her father. After the father's departure for work the next morning, the prosecutrix told her mother of the incident. She was taken to the sheriff's office and from there to a doctor's office where she was examined by the physician for evidence of sexual intercourse.

On that date, November 2nd, defendant was charged with rape, arrested and taken before a magistrate. He waived preliminary hearing and was held to answer the charge in the district court. During the investigation of the alleged crime, tape recordings were made of statements made by the other three members of the party engaged in the affair of November 1st.

November 6th, defendant was brought before the district court for arraignment. Being advised by defendant that he had no attorney, nor funds to employ an attorney, the court informed defendant an attorney would be appointed to represent him, and the arraignment was continued to another day. The attorney appointed was Mr. Eugene F. McCann, who had had twenty-five years experience as a general practitioner, and at sometime in the past had served as prosecuting attorney of Shoshone county.

Arraignment was resumed on November 16th with defendant and his counsel in court. Defendant's counsel waived the reading of the information and acknowledged receipt of a copy thereof. The court then advised defendant of the charge against him and of his right to a twenty-four hour delay before entering his plea; to which he replied, "Wish to enter a plea at this time." Being asked to state his plea, defendant replied, "Guilty, your Honor, but I do not recall the incident now"; to which the court responded:

"THE COURT: We will get into that in a minute. Would the Clerk please enter the plea of guilty to the charge of rape. At this time we can proceed with the pre-sentence hearing or do you wish to take a delay on that?

"MR. MAGNUSON: I am prepared to continue, your Honor.

"MR. McCANN: I think Mr. Martinez would like to have it over and done with today rather than delay.

"THE COURT: You have the right to a 48 hour delay before sentence is passed. Do you wish to waive that time?

"A Yes."

Mr. Magnuson, the prosecuting attorney, then made a statement of the facts as he understood them. The result of the medical examination of the prosecutrix was related

to the court by the prosecuting attorney as follows: 

"Medical examination was performed by Dr. A. M. Peterson of Wallace, Idaho, and if he were here his testimony would be that her hymen had been previously ruptured and he took a vaginal smear but it did not show the presence of any sperm or semen but that there was irritation in her vaginal area which was of quite recent origin."

Defendant's counsel then inquired of the prosecutor:

"MR. McCANN: Are you making any claim the rupture of the hymen was recent?

"No, I believe the doctor would testify that happened sometime before but there was an irritation of her vaginal area which was of very recent origin."

Defendant's counsel then addressed the court, "Rather than make a statement, I would like to call the defendant to the stand." The defendant was then sworn and testified on his own behalf. During the course of his examination he testified that his home was in Butte, Montana; that he had come to Idaho about June 15, 1964, seeking employment and was at the time employed by the Sunshine Mining Company; that his purpose was to raise money to go back to school for his last year of college; that he had completed three years of college study in pharmacy at the Montana State College, Bozeman, Montana, during which time he had maintained a student rating of "A" average; that he had never been in serious trouble before; that the present was his third arrest, the first was for a traffic violation in Butte, Montana, and the second for contributing to the delinquency of minors. He explained the latter charge by saying that he had loaned his car to three boys to attend a drive-in theater, after which beer was found in the car; that he had not been present at the time because he was working on the night shift at the mine; that if he were paroled and permitted to do so he would return to Montana, borrow the necessary funds and reenter the Montana State College to complete his course in pharmacy.

Under cross-examination by the prosecuting attorney as to why he did not remember the incident, he testified he could not explain why he could not remember; that he was not insane nor intoxicated, and "I don't know, I can't seem to remember. I have laid awake nights trying to think of it, it just doesn't come."

"Q How much beer did you have to drink that evening?

"A I had four bottles myself."

The court then heard the prosecuting attorney and defense counsel on defendant's plea for clemency. Afterwards the court informed the defendant that he was per-

suaded by his college background and his grade average of "A" in pharmacy over a three-year period, to order that sentence be withheld for a period of one year during which time the defendant would be placed on probation on condition that he return to Montana and to the Montana State College at the earliest opportunity; supervision of his probation to be arranged between the state board of corrections of Idaho and the proper Montana authorities; and that defendant be held in custody until these arrangements were made. Order was made and entered accordingly.

The next day, November 17, 1964, at 3:25 p. m., the defendant, with his counsel, was again brought before the court. The court then advised defendant that the court had been informed that some of the statements he had made the day before were false, and

"For that reason I have asked the defendant to be brought back into court and I think it is only fair at this time, without going into the question of whether or not these things are true or not true, to give the defendant the opportunity to withdraw his plea of guilty if he so desires because if these matters had been misrepresented to the court of course I would have no alternative but to impose a different type of sentence. Are you aware of what I am talking about Mr. Martinez?

"A Yes, I am.

"THE COURT: I will give you that opportunity at this time if you so desire to withdraw your plea or do you wish to let it stand as it is?

"A Could I talk to my lawyer?

"THE COURT: Yes. (Defendant consulted with Mr. McCann). Do you wish to take advantage of that offer?

"A No, your Honor, I wish to leave the plea as it is."

The prosecuting attorney then advised the court that he had been informed by the office of the registrar of the Montana State College in Bozeman that no one by defendant's name had attended that college ;and that no school of pharmacy was conducted there; that he inquired of the Montana State University at Missoula where a school of pharmacy was conducted and was advised that no one by defendant's name had ever been in attendance there. The prosecutor further advised the court that the records of the Sunshine Mining Company revealed that defendant worked the day shift, not the night shift, on the day of the alleged offense of dispensing beer to minors at the drive-in theater. On objection by defendant's counsel telegrams from the two Montana schools and a copy of a record of the Sunshine Mining Company were excluded from evidence, as hearsay.

The court then advised the defendant that the court would vacate the order of parole

and withhold sentence temporarily for further investigation; that he need not respond to the charges made by the prosecuting attorney; and that, if he did so, any statement or testimony he might give may be used against him at a future time. The defendant was then sworn and the following proceedings were had:

"THE COURT: Mr. McCann, before he testifies, do you have any objection as technically representing him at this time, to his testifying?

"MR. McCANN: Well, your Honor, I am in a very peculiar position. I wish to ask the court to allow me to withdraw from this and if Mr. ———, the defendant here, desires to go any further in the matter, that the court appoint another attorney because I don't feel, from what I know of this, that I could put in a defense that I believe would be helpful to the defendant. Now, I don't wish to prejudice his case in any way with the court but I just have that feeling.

"THE COURT: Well, I appreciate that. Actually at this stage of the proceeding there is no legal requirement the defendant be represented by an attorney, it is merely a post plea proceeding and depending on his testimony I certainly would consider your request to withdraw but I think he should be allowed to testify if he desires.

"MR. McCANN: If he desires. He isn't doing this upon my advice.

"THE COURT: If both counsel have no objection, possibly I could ask a few questions and if there is anything else you wish to ask we can take it up from there.

"THE COURT: Q While these exhibits, Mr. Martinez, haven't been admitted in evidence, I am sure you are aware of the fact the Prosecutor did call the registrar at Montana State College who advised him that you had not been enrolled there and your testimony yesterday was to the effect you were enrolled there up until June, 1964. Can you verify that?

"A Yes, your Honor, I am willing to admit I lied because I was scared.

"THE COURT: Then, as a matter of fact, you were not a student at Montana State College in the school of pharmacy during any of the time you testified to yesterday?

"A No.

\* \* \* \* \* \*

"THE COURT: \* \* \* Did you advise your attorney prior to the hearing yesterday that you had so attended the Montana State College?

"A Yes, I have told him I did.

"THE COURT: As far as you know he wasn't aware you didn't attend that?

"A No, he did not."

On further cross-examination defendant admitted that his statement to the court that he was on night shift at the Sunshine Mine and was not present at the drive-in theater when the three minors were found in his car in possession of beer, was false; that he was personally present with the minors at the theater.

Mr. McCann then informed the court that the defendant had made the same representations to him concerning his educational background as he had made to the court; that he had acted upon the assumption that defendant was truthful and asked the court to permit him to withdraw from the case as defendant's counsel.

The court then advised Mr. McCann that he would be permitted to withdraw and assured him that the court indulged no inference that Mr. McCann had any part in the misrepresentations made to the court by the defendant; and advised the defendant that while sentence would be imposed, it would not be extended because of the misleading statements; and that because the court believed that defendant had deliberately attempted to mislead the court, the judge would disqualify himself in any subsequent proceedings brought against defendant on a charge of perjury. Although permitted to withdraw, Mr. McCann made a plea to the court that defendant's incarceration be not prolonged beyond that resulting from the conviction of rape, because of any possible subsequent conviction of perjury.

The cause was then continued and on December 1, 1964, defendant was brought before the court and judgment of five years imprisonment in the state penitentiary was entered against him.

Thereafter, one Daniel J. Shea, a brother-in-law of the defendant, recently admitted to practice law in the state of Montana, and presently residing in Spokane, Washington, began an investigation of the circumstances connected with the offense and in association with an Idaho attorney filed a motion for an order permitting defendant to withdraw his plea of guilty. Hearing was had on this motion on December 14, 1964. In support of the motion defendant presented affidavits made by Shea, and the other girl, and the other boy, who were present at the "necking" party on the date of the alleged offense, and an affidavit made by defendant's landlady. The other girl averred she had a date with defendant; that they might be married in June; that the prosecutrix flirted with defendant repeatedly during the evening. She detailed the events of the evening including the drinking of beer and of her becoming sick. Other than the flirting she made no reference to any intimacy between defendant and the prosecutrix, and neither

affirmed nor denied that an act of sexual intercourse occurred. The other boy averred he had not seen an act of sexual intercourse between defendant and prosecutrix on the occasion charged and had no knowledge of such an act. The landlady averred that defendant told her that had he done such a thing he would have remembered, but that he didn't remember doing such a thing. In his affidavit attorney Shea detailed the results of his interviews with various persons, including the participants in the party. One paragraph of the relation of his interview with the other boy is as follows:

"That Wayne James [the other boy] told affiant that he did see Bob [defendant] disrobing Patsy [prosecutrix], that Patsy was completely naked, and that Wayne James had seen all the sex organs of Patsy; but Wayne James further states that Bob did not rape Patsy when they were engaged in this incident."

Defendant was sworn and testified. At this time he testified that before entering his plea his court-appointed attorney had told him that the other three members of the necking party would testify that he did commit the rape charged; that the doctor told defendant's counsel he had found spermatozoa in the vaginal area of the prosecutrix; and that he plead guilty on the advice of his counsel. On cross-examination he testified that he had been twice previously convicted of felonies, and concerning spermatozoa as follows:

"Q Now, you used a word in your direct testimony, you indicated Mr. McCann had told you there wasn't something present, what was that, the doctor's examination had showed something wasn't present or was present.

"A He told me there was spermatoza [sic] found.

"Q Where did you ever hear this word 'spermatoza' [sic] before or had you ever heard it before Mr. McCann told it to you?

"A I had heard it before but never used it before.

"Q Have you heard it since?

"A Yes, I heard it that day up here when you were telling the Judge there was no spermatoza [sic] found.

"Q What did you hear me tell the Judge?

"A You stated right there, you said there was no spermatoza [sic] found."

He also testified that he now remembered what happened during the "necking" party; detailed various incidents which occurred at that time; and denied he had committed the rape charged.

The court in denying defendant's motion to withdraw his plea made the following observation:

"I have felt that during this proceeding it would be almost impossible, under the background of this case, to accept the testimony of the defendant as to what transpired between the attorney and the client, the defendant. I feel that there have been more evidences of a change in testimony today and certainly had evidence of change in the testimony at a previous hearing on the 17th of November and I think the defendant himself has completely destroyed his veracity as far as this court is concerned. I think if the record was examined that any other court would come to the same conclusion, so we are left with a situation where the court cannot believe the defendant but can only accept affidavits filed by his counsel, most of which are in the nature of hearsay and most of which, at the best, only show that there has been a series of possible discrepancies between stories told to the prosecution by the witnesses and the possibility that they would so testify contrarily at the present time, and on the basis of this I feel that the only discretion the court can exercise, while it should be exercised liberally, would be to deny the motion and that is what I am going to do."

Defendant contends that his constitutional rights to counsel (U.S.Const., Amend. VI) was violated in that he was denied counsel when arraigned before the magistrate, where he waived his right to a preliminary hearing. We find no merit in this contention. In Freeman v. State, 87 Idaho 170, 392 P.2d 542 (1964), Justice Knudson, after considering recent decisions of the Supreme Court of the United States, said:

"While it is recognized that an accused has a right to counsel at every stage of proceedings, we do not understand this to mean that he must be so represented in the preliminary processes which take place primarily for the purpose of ascertaining whether a crime has been committed and whether there are reasonable grounds to believe that the accused has committed it, and particularly where no prejudice has befallen him. During the preliminary hearing in the instant case the accused did not enter any plea nor was he requested to do so, and no claim is made of any incriminating statements or acts on the part of appellant. * * * Appellant was not thereby prejudiced nor was it in conflict with appellant's constitutional rights." 87 Idaho at 179, 392 P.2d at 547.

In this case no prejudice to the defendant appears from want of counsel at the arraignment before the magistrate.

Defendant contends the court erred in directing the entry of a plea of guilty, in view of defendant's statement at the time that he did not recall the incident. During his extensive examination before the court, defendant gave no logical or acceptable reason why he could not remember the "incident." Furthermore, at the continued hearing the defendant was given the opportunity to change his plea. After conferring with his counsel he declined to do so and chose to leave the plea at it was. The court made it clear to the defendant that the court regarded his plea as an unqualified plea of guilty. It is also clear from the record that defendant, at the time he declined the opportunity to change his plea, intended to let his plea stand as an unqualified plea of guilty.

By his third assignment, defendant urges that the court abused its discretion in denying his motion to withdraw the guilty plea. The rule in this jurisdiction is that the granting or denial of such a motion is within the discretion of the trial court and that such discretion should be liberally exercised. State v. Thurlow, 85 Idaho 96, 375 P.2d 996 (1962); State v. Lawrence, 70 Idaho 422, 220 P.2d 380 (1950); State v. Poglianich, 43 Idaho 409, 252 P. 177 (1927); State v. Raponi, 32 Idaho 368, 182 P. 855 (1919). However, the burden is upon the movant to establish the claimed abuse of discretion. State v. Lawrence, supra.

It is defendant's contention that the plea was induced by misapprehension, inadvertence or ignorance. It is claimed that the court-appointed attorney was mistaken as to the actual nature of the prosecution's evidence when he advised defendant to plead guilty. The defense did not contend that the attorney appointed by the court was incompetent. There was no showing that he was negligent in his handling of the defense or that he made any misrepresentations to the defendant. In fact, the contrary appears. On this issue the defendant contradicted himself. At one point he represented to the court that the attorney had told him the medical examination revealed the presence of spermatozoa in the vaginal area of the prosecutrix and at another point he testified that he heard the prosecuting attorney tell the court that the medical examination did not reveal the presence of such sperm. The record in this case, together with defendant's previous experience in criminal prosecutions indicates that his plea was voluntarily, advisedly and understandingly entered. Commonwealth v. Mullin, 194 Pa.Super. 18, 166 A.2d 555 (1960); Fortson v. State, 96 Ga.App. 350, 100 S.E.2d 129 (1957).

In his last assignment defendant contends the court erred in restricting the

hearing on his motion to withdraw the plea to the question as to whether the plea was voluntarily entered. The court did rule that the issue as to whether the plea was voluntarily and understandingly entered was the basic issue. This ruling was correct. People v. Outcault, 90 Cal.App.2d 25, 202 P.2d 602 (1949); United States v. Morin, 265 F.2d 241 (3rd Cir. 1959); Friedman v. United States, 200 F.2d 690 (8th Cir. 1952); 22 C.J.S. Criminal Law § 421(5), p. 1161.

However, the court at no time restricted defendant or his counsel to that issue. On the contrary, defendant was permitted to and did make whatever showing he desired of any and all facts and circumstances concerning not only the nature of the plea, but involving defensibility of the charge contained in the information. As the trial court observed, the showing consisted mostly of hearsay.

We find no error and no abuse of discretion on the part of the trial court. Cf. I.C. § 19–1714; State v. Thurlow, 85 Idaho 96, 375 P.2d 996 (1962); State v. Lawrence, 70 Idaho 422, 220 P.2d 380 (1950); State v. Poglianich, 43 Idaho 409, 252 P. 177 (1927); State v. Peterson, 42 Idaho 785, 248 P. 12 (1926); State v. Arnold, 39 Idaho 589, 229 P. 748 (1924); State v. Raponi, 32 Idaho 368, 182 P. 855 (1919).

The judgment and order appealed from are affirmed.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.