842 P.2d 275

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Daniel McGONIGAL, Defendant–Appellant.**

**No. 19578.**

Supreme Court of Idaho,
Pocatello, September 1992 Term.

Nov. 23, 1992.

Loveless, Neilsen & Neilsen, Pocatello, for defendant-appellant. Michael B. Neilsen argued.

Larry EchoHawk, Atty. Gen.; and Douglas A. Werth, Deputy Atty. Gen., Boise, for plaintiff-respondent. Douglas A. Werth argued.

**JOHNSON, Justice.**

This is a criminal case in which there are only two issues:

1. Did the trial court have jurisdiction to resentence the defendant before the defendant had been placed in the custody of the board of correction?

   Following *State v. Johnson*, 101 Idaho 581, 618 P.2d 759 (1980), we conclude that the trial court did have jurisdiction.

2. Did the trial court abuse its discretion in increasing the defendant's sentence?

   Applying the standards stated in *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992), we conclude that the trial court did not abuse its discretion.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Daniel McGonigal was serving a sentence at the state correctional institution when he was transported to Bannock County for proceedings in another case. On the morning of September 23, 1991, the trial court sentenced McGonigal to serve a fixed term of five years followed by an indeterminate term of ten years, to run concurrently with the sentence he was already serving. The trial court then ordered the sheriff to transport McGonigal back to the state correctional institution.

In the afternoon of the same day, September 23, 1991, the trial court held another sentencing hearing to consider threats allegedly made by McGonigal against the judge and a police officer immediately after the morning proceeding. After hearing the evidence, the trial court withdrew its earlier sentence and resentenced McGonigal to a fixed term of fifteen years, to be served consecutively to the sentence he was already serving.

Later, the trial court considered McGonigal's motion for reduction of sentence under I.C.R. 35 and modified the sentence to a fixed term of ten years followed by an indeterminate term of five years, to be served consecutively to the sentence McGonigal was serving when he was brought to Bannock County on September 23, 1991.

McGonigal appealed.

## II.

### THE TRIAL COURT HAD JURISDICTION TO RESENTENCE McGONIGAL.

McGonigal asserts that the trial court did not have jurisdiction to resentence him. We disagree.

In *State v. Johnson*, the Court held that a trial court has jurisdiction to withdraw its sentence and impose a new one before the defendant has been placed in the custody of the board of correction under the original sentence and commitment. In this case, at the conclusion of the sentencing on the morning of September 23, 1991, the trial court ordered the sheriff to transport McGonigal back to the state correctional institution. The sheriff had not transported McGonigal to the state correctional institution, nor had the board of correction taken custody of McGonigal, before the trial court resentenced McGonigal. Therefore, the trial court had jurisdiction to resentence McGonigal.

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN INCREASING McGONIGAL'S SENTENCE.

McGonigal asserts that the trial court abused its discretion in increasing McGonigal's sentence. We disagree.

We note first that the trial court subsequently reduced the fixed sentence of fifteen years imposed on the afternoon of September 23, 1991, to a fixed sentence of ten years followed by an indeterminate sen-

tence of five years, to be served consecutively to McGonigal's prior sentence. We consider only any abuse of discretion relating to the reduced sentence, not the fixed sentence of fifteen years.

In *State v. Broadhead,* we said that in determining whether the trial court abused its discretion by imposing a sentence that the defendant contends was unreasonable, "we must be convinced that considering (1) the protection of society, (2) deterrence of [the defendant] and others, (3) the possibility of [the defendant's] rehabilitation, and (4) punishment or retribution for [the defendant], the sentence was excessive under any reasonable view of the facts." 120 Idaho at 146, 814 P.2d at 406; *see also State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).

In resentencing McGonigal, the trial court considered the threats McGonigal had made against the judge and a police officer after the sentencing on the morning of September 23, 1991, and emphasized that the increased sentence was for the protection of society. We conclude that reasonable minds might differ whether a fixed term of ten years followed by an indeterminate term of five years, to be served consecutively to McGonigal's prior sentence, is necessary to protect society from McGonigal. It was a reasonable view of the facts for the trial court to conclude that the increased sentence was necessary to protect society. Therefore, we will not substitute our view of the appropriate term of confinement for the view of the trial court.

## IV.

## CONCLUSION.

We affirm McGonigal's sentence.

BAKES, C.J., and McDEVITT, and TROUT, JJ., concur.

BISTLINE, Justice, dissenting.

## PRECLUDE

This justice adheres to the views previously expressed in his dissent in *State v. Johnson,* 101 Idaho 581, 618 P.2d 759 (1980). In the instant case, however, we are not presented with the question of whether *Johnson* should be overruled. The facts here are clearly distinguishable from those in *Johnson* and thus mandate reversing the district court.

## PART I.

The majority opinion's rationale is succinct, but otherwise valueless as precedent. The *ratio decidendi* advanced therein is nil. Positing the question, "Did the trial court have jurisdiction to resentence the defendant before he had been placed in the custody of the Board of Corrections?" the ready answer was supplied, namely that "the trial court did have jurisdiction." Missing, however, is supporting statutory or case law authority, if any exists. For that holding the Court ironically cites *State v. Johnson,* 101 Idaho 581, 618 P.2d 759 (1980). The irony lies in the fact that counsel for Robert Johnson was Peter J. McDermott, now and for the past eleven years a district judge noted for his compassion in trying to lead misguided miscreants down a better path. There were two strong votes registered in *Johnson* which thoroughly faulted the opinion which the Court issued, as is well evidenced by the dissenting opinion. 101 Idaho at 585–93, 618 P.2d at 763–71.

Those members of the bar who were acquainted with him will readily acknowledge that Justice McFadden was not a jurist who would readily sign on to a dissenting opinion on appeal from a district court judgment of felony conviction. No more need be said in that regard. *A fortiori,* reasonably minded practitioners and jurists may rest assured that *Johnson was wrongly decided,* so much so that the opinion for the Court is readily seen as an unfortunate travesty.

The proposition before this Court today is simply stated. Should four justices find satisfaction in issuing to the public, and the trial bench and bar, an opinion which is of no precedential value whatever, but serves only to confine Daniel McGonigal (at taxpayer's expense) for a far longer time than

942

the trial court initially intended? Has the Court achieved a *just determination?*[1]

## PART II.

Another flaw in the majority's decision in the matter *sub judice* is that it expands *Johnson* beyond its holding without so stating. *Johnson* simply purported to reaffirm *McFarland v. Hunt,* 79 Idaho 262, 313 P.2d 1076 (1957), which held that once a valid sentence has been executed, the trial court cannot modify it. *See, Johnson,* 101 Idaho at 585, 618 P.2d at 763. A close reading of *Johnson* discloses the holding that where a valid sentence has not been put into execution, the trial court may modify it; it does not hold that the defendant *must* be in the custody of the Board of Corrections in order that an imposed sentence is said to be executed. It is an unwarranted leap in logic to say that because custody in the Board of Corrections is a *sufficient* condition of execution, it is a *necessary* condition. In fact, Johnson had not been placed into anyone's custody pursuant to the initially imposed sentence.[2]

The issue then becomes, when is a sentence executed? The *Johnson* majority noted the significance of Idaho Code § 19–2703, which provides in part that "[i]f the judgment is for imprisonment, ... the defendant must forthwith be committed to the custody of the proper officer, and by him detained until the judgment is complied with." This statute, which was not raised as an issue on appeal in *Johnson,* serves to illustrate that a sentence is executed when such commitment occurs, since the *defendant's liberty is being curtailed pursuant to the "original sentence and commit-*

*ment." See Johnson,* 101 Idaho at 585, 618 P.2d at 763 (emphasis added).

That approach to determining when a sentence has been executed is preferable to that of today's majority because it promotes finality while still allowing the sentencing judge discretion. The majority's approach is out of line with other states, *see* 21 Am.Jur.2d Criminal Law § 581; 26 A.L.R.4th 905, and leads to uncertainty and arbitrary results, since the amount of time it takes for a prisoner to be delivered to the Board of Corrections may vary widely.

In the instant case, McGonigal was placed in the county sheriff's custody *immediately* after the hearing and transported to county jail, where he was confined in a cell. Moreover, unlike the district judge in *Johnson,* the district judge in imposing sentence in the instant case did not indicate in any manner that the execution of the sentence was being postponed. McGonigal's sentence was thus deemed to be executed when he was committed to the custody of the sheriff for immediate confinement locally to await delivery of his person to personnel from the board of corrections. His sentence was in the process of being executed, and thus the trial court was without jurisdiction to increase his sentence.

## PART III.

Even accepting, *arguendo,* the majority's conclusion—that it was within the trial court's jurisdiction to increase McGonigal's sentence—the sentencing court here abused its discretion in denying McGonigal due process of the law by failing to allow his counsel sufficient time to prepare for the second sentencing hearing.[3]

---

1. Rule 2 of the Idaho Criminal Rules reads in part as follows: "Purpose and Construction. These rules are intended to provide for the *just determination* of every criminal proceeding."

2. Quoting from *Johnson:* "[T]he original sentence imposed on Johnson was never put into execution. Following the sentencing, the court granted Johnson three days to enable him to attend to his personal affairs prior to commencing his sentence.... Johnson's subsequent arrest in Arizona and extradition to Idaho were made pursuant to the bench warrant issued May 5, 1977 [for failure to surrender to commence serving his sentence]. Prior to his resentencing

on July 11, 1977, Johnson had not been placed in the custody of the Board of Corrections under his original sentence and commitment. Therefore, the district court had jurisdiction to withdraw its sentence and impose a new one since the defendant has not commenced serving the original sentence." 101 Idaho at 585, 618 P.2d at 763.

3. McGonigal's counsel objected repeatedly at the second hearing that he had not been given the statutory time for a sentencing hearing, presumably pursuant to Rule 33(a). Although McGonigal did *not* raise this issue in his initial brief (it

McGonigal's case is clearly distinguishable from Johnson's in this respect. In *Johnson,* the district court sentenced the defendant to prison on April 29, 1977. After sentencing Johnson, the district court allowed him three days of freedom prior to reporting to the sheriff, "to get his affairs in order." 101 Idaho at 582, 618 P.2d at 760. The judge specifically warned Johnson that he would be sentenced more severely if he did not show up:

> "THE COURT: Now, you understand that if you do run, you are going to be brought back?
>
> MR. JOHNSON: I have no intentions on running.
>
> THE COURT: And *if that happens, I can promise you that I am going to bring you in for resentencing, and the sentence will be much more severe than it has been this morning;* do you understand that?
>
> MR. JOHNSON: Yes.
>
> THE COURT: I have the right to retain jurisdiction for a period of 120 days, and I will do it to that extent, that *if you do not show up, you are going to be returned here and the full sentence allowable under the law will be imposed.*"

101 Idaho at 582–83, 618 P.2d at 760–61. Despite this exchange, Johnson shied away from being incarcerated and failed to report in to commence serving the imposed sentence. Three days later a bench warrant was issued for his arrest, and he was apprehended. True to the Court's promise, a second sentencing hearing was held on July 11, 1977, almost two-and-a-half months later; Johnson's sentence was increased from an indeterminate term not to exceed three years to a fixed term of five years. *Johnson,* 101 Idaho at 583, 618 P.2d at 761.

In the instant case, McGonigal had no warning ahead of time that anything that he said in frustration after sentencing would be used against him. Even more problematic, the sentencing judge decided to hold a hearing no more (and probably less) than four hours after giving notice to McGonigal and his counsel.[4] *Cf. State v. Poglianich,* 43 Idaho 409, 252 P. 177 (1927) (reversal based partly on the fact that "[f]rom the adjournment [of the arraignment] until 2 o'clock [approximately 4 hours], [defendant's counsel] had scant opportunity to advise the defendant, no opportunity to get at the real facts other than what the prosecuting officers told him they were." 43 Idaho at 423, 252 P. at 191).

---

was, however, raised in the reply brief, and the state was apparently prepared to address McGonigal's due process arguments during oral argument), the error is fundamental and thus should be addressed by this Court. *See State v. Kenner,* 121 Idaho 594, 597, 826 P.2d 1306, 109 ("An error that goes to the foundation or basis of a defendant's rights is a fundamental error."). The sixth amendment right to counsel is a fundamental right, perhaps *the* most fundamental. *See Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967) ("[o]ther prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error [citing *inter alia, Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) for right to counsel]"). Included in that right is the right to effective assistance of counsel. *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989) (actual or *constructive* denial of assistance of counsel altogether is not subjective to kind of prejudice analysis appropriate to determining whether the *quality* of a lawyer's performance has been constitutionally ineffective). *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1448, 25

L.Ed.2d 763 (1970). Forcing counsel to proceed in a judicial proceeding with essentially no time to prepare amounts to a constructive denial of assistance of counsel. It is therefore appropriate for the Court to address this issue. Indeed, with all due respect to my colleagues, it is an abdication of judicial responsibility for this Court *not* to address it.

4. The first sentencing hearing took place at 8:40 a.m. The second hearing (which the judge called a "continuation") took place at 1:30 p.m. that same day. The prosecution's witnesses establish that the comment McGonigal allegedly made by the elevator, was made between 9:30 and 10:30 a.m. Thus, the judge would not have heard that comment until at least 9:30 a.m., after which he presumably would have taken some time to contact McGonigal's counsel as to the second hearing. Furthermore, McGonigal allegedly made a comment later at the county jail when being placed in his cell. If all of these comments were relayed to the judge at the same time, who then notified counsel, much less time than four hours would have elapsed from the time McGonigal's counsel received notice until the hearing.

Although the trial judge denominated the second hearing a "continuation of the sentencing, not a new sentencing," the old saying applies: if it walks like a duck and quacks like a duck, it *is* a duck. The afternoon hearing should properly be viewed as a second sentencing hearing, as the majority seems to view it, since it dealt with subject matter occurring after the first hearing. Idaho Criminal Rule 33(a)(1) provides, in relevant part, "After a plea or verdict of guilty, if the judgment be not arrested nor a new trial granted, the court must appoint a time for pronouncing judgment and sentence, which, in cases of felony, must, unless waived by the defendant, be at least two (2) days after the verdict." Idaho Criminal Rule 33(a)(1) does not specifically discuss later second sentencing hearings, nor does any other I.C.R. (perhaps because the drafters did not envision that judges had jurisdiction to impose sentence and thereafter increase the initial sentence). Nonetheless, I.C.R. 33(a)(1) would logically seem to govern re-sentences, at least by analogy.[5] At the very least, the rule indicates that the drafters recognized that fairness dictates that defense counsel be allowed time to prepare for sentencing, and I.C.R. 33(a)(1)'s minimum of two days seems reasonable.

The facts of this particular case make clear why it is fundamental that counsel and judges be given time to reflect on and to prepare for sentencing and re-sentencing proceedings.

First, the trial judge re-sentenced McGonigal solely upon the evidence offered at the second hearing. The trial judge stated that "[t]his [c]ourt asked for a hearing this afternoon and this Court on its own motion is going to reopen the sentencing *depending on the facts and circumstances that are brought forth.*" R. 51:9–12 (emphasis added). The trial judge reiterated, "[I]f the Court elected to, *depending on the evidence here,* if the Court elected to reopen the sentencing...." R. 52:3–5 (emphasis added).

Moreover, the resulting increase in sentence was vast. The prosecutor originally recommended that McGonigal be sentenced to a fixed term of three years and indeterminate term of four years, concurrent with an identical term McGonigal was already serving for an earlier conviction. The district court sentenced McGonigal to a fixed term of five years and an indeterminate term of ten years, to run concurrently with the earlier sentence. This first sentence essentially meant that McGonigal would be eligible for parole in an additional two years. The second sentence which the judge imposed was a fixed term of fifteen years, to be served *consecutively,*[6] later reduced to a fixed term of ten years and indeterminate term of five years, still to be served *consecutively.* This final sentence meant that McGonigal would spend at least seven years in prison before he would be eligible for parole, over three times greater than his initial sentence.

**5.** Another procedural defect in the hearing was the judge's failure to give the defendant the right of allocution as provided for in I.C.R. 33(a)(1). Although McGonigal did not appeal this error, its existence reinforces the argument that the trial judge did not adhere to accepted common law and statutory procedure in re-sentencing McGonigal.

**6.** At the first sentencing hearing, the judge responded to McGonigal's discontent with the sentencing, "Like I told you, it could have been a lot worse. If I wanted to hammer you, Dan, I could have. I could have given you a fixed fifteen and made it run consecutive." R. 50:1–4. That is exactly what the judge did in the second hearing. Although he later reduced the sentence pursuant to a I.C.R. 35 motion, it is instructive as to another possible reason why the drafters of I.C.R. 33 provided at least two days

before sentencing—to allow the judge, as well as counsel, time to contemplate the proceedings with due deliberation.

It is readily understood how a district judge, any district judge not being incapable of emotional expression, could be momentarily swayed by disappointment and frustration on beholding that a convicted defendant, who the court at sentencing is attempting to rehabilitate, blows his cool and lashes out at judicial authority. Were the Court to heed what is plainly obvious, we would this day vacate the sentence which was imposed upon Daniel McGonigal and remand the cause to Judge McDermott for reconsideration and resentencing. The capabilities of the district judge are such as to leave no doubt that aspiring to avoid injustice will in that manner be best served.

It is true that a judge probably could have sentenced McGonigal to the maximum term of fifteen years at the first hearing if McGonigal had actually shown himself to be a danger to society during that hearing, *which apparently he did not.* It is axiomatic that trial judges possess broad discretion in sentencing. But McGonigal's remarks were made outside the judge's hearing, and, on being relayed to him constituted hearsay, which distinguishes this situation from the situation where a judge actually witnesses a defendant's behavior. Even though hearsay evidence is admissible in sentencing proceedings, the defendant must be afforded an opportunity to present favorable evidence and to explain or rebut adverse evidence. *Johnson,* 101 Idaho at 583, 618 P.2d at 761, *citing State v. Moore,* 93 Idaho 14, 454 P.2d 51 (1969). In the context of the facts of this case, specifically the paucity of time allowed Neilsen to prepare for cross-examination and presentation of evidence, defendant was not given a *meaningful* opportunity to accomplish the above. This is particularly troubling because determining the exact content of McGonigal's alleged threats was crucial. Obviously, McGonigal's dangerousness was the judge's key consideration in re-sentencing: "I'm convinced, as I say, that you need to be incarcerated for the protection of society, society as a whole, not just those that you made the threats against." R. 80–81. And again, "So the sentence pronounced this morning is withdrawn.... [E]mphasizing this is for the protection of society, you're remanded to the custody of the Bannock County Sheriff...." R. 81:10–14. Thus, any differences in testimony, such as the addition of "maybe" or "I wish," would indicate that McGonigal was merely disgruntled about his sentencing, not actually serious in uttering the threats attributed to him.

Second, the lack of time no doubt exacerbated various difficulties McGonigal's counsel, Mr. Neilsen, experienced. As Mr. Neilsen explained at the second hearing, "Your, Honor, I find myself in an uncomfortable situation here because—and I'm not sure I want this on the record yet. I wonder if we could take a small break and have a discussion outside the hearing of the Court—or the defendant.

The Court: A discussion outside the hearing of who?

Neilsen: Of the defendant, Your Honor. I'm not sure how to handle this because I think I may be a witness here and I don't want to be put in that position if I'm representing Danny at the same time.

The Court: You want to talk to your client, is that what you want to do?

Neilsen: *I need to talk to my client and to the Court and possibly counsel for the State, discuss how this should be handled.*

The Court: Well, I think, Mr. Neilsen, anything with regard to this hearing ought to be on the record.

Neilsen: Well, I would simply inform the Court, then, that I was also present at the same time that this comment was made and *I heard the same comment that they allegedly heard and it was not the same as they are repeating.* I don't know—I don't want to testify if I can help it either because I don't want to be a witness, but *that testimony is obviously important to my client if it differs from the officers'.*"

R. 62–63 (emphasis added). Surely, given adequate time Mr. Neilsen could have resolved this ethics dilemma of being required to testify for his client, *see* Idaho Rules of Professional Conduct 3.7, perhaps by finding other witnesses. But this key matter and testimony was lost in the rush of the second sentencing hearing.

In light of the fact that the defendant's constitutional right to due process was violated, the district court abused its discretion. Thus, even if this Court holds that the district court had the jurisdiction in the power sense to re-sentence McGonigal, the Court should vacate the second sentence and remand to the district court with directions to conform to due process requirements as expressed in Rule 33(a)(1) at a renewed second sentencing hearing. If the decision were mine alone to make, the cause would be remanded for reconsideration of the sentence, which in my view would be the course to follow for reasons

expressed in *State v. Russell,* 122 Idaho 488, 835 P.2d 1299 (1992).

## CONCLUSION

The district court exhausted its jurisdiction over McGonigal once he was sentenced.