422 P.2d 55

**John Henry BEMENT, Plaintiff-Appellant,**

v.

**STATE of Idaho, Defendant-Respondent.**

No. 9890.

Supreme Court of Idaho.

Dec. 29, 1966.

Roberts & Poole, Boise, for appellant.

Allan G. Shepard, Atty. Gen., and M. Allyn Dingel, Jr., Deputy Atty. Gen., Boise, for respondent.

McQUADE, Justice.

John Henry Bement, appellant, was eighteen years old at all pertinent times related herein. He had completed the ninth grade but failed in two attempts to graduate from the tenth. His classwork in the first nine grades had been poor, with failure of a number of courses. He admitted to being "a little slow in catching onto the subjects," and his maternal grandmother, who acted as his foster parent, testified that he was "awful slow" in school, and his intelligence was below average. In the summertime, he dug basements. After the habeas corpus hearing below, the trial court found "He is of subnormal intelligence and inexperienced in and ignorant of court proceedings."

In early June 1965, while residing in his maternal grandmother's home in Boise, he drove with her to visit his other grandmother. At Hagerman Valley the car developed motor trouble. While waiting for it to be repaired, he and another youth borrowed a car and, while driving through Jerome, consumed some beer. Appellant was arrested for illegal consumption, a misdemeanor, and placed in the Jerome County Jail.

On June 7, 1965, an incident occurred in the jail as a result of which appellant was charged with the felony of escape by one charged with or convicted of a misdemean-

or; I.C. § 18–2506 (Supp.1965).[1] The alleged acts on which respondent grounded the charge are not revealed in the record, but appellant, in an affidavit supporting his petition for a writ of habeas corpus, described the incident as follows:

"[That he] was detained in a cell with three other gentlemen of the same age * * * [W]hile the jailer was entering the cell to serve meals to the prisoners, one Ernest McCurdy forced his way by the jailer and out the cell door and managed to escape from the building. That the affiant [appellant] did not at any time leave the building nor vicinity of his cell block."

After this occurrence, appellant was isolated from the outside world. The sheriff refused his maternal grandmother opportunity to visit with him on three occasions. She was never informed that the felony charge was to be lodged. Jerome County Sheriff James B. Burns testified at the hearing below that he would not allow appellant visitors but would have allowed him, had he asked, to see an attorney. Between the time of the alleged offense and his conviction, appellant saw no one except jail personnel and prisoners. At no time did the prosecuting authorities interrogate or explain to him the nature of the charge.

On June 18, 1965, appellant appeared without counsel before the Probate Court of Jerome County. On the habeas corpus proceeding the trial judge found:

"What occurred during those proceedings is rather vague. The Complaint was read to Petitioner, he was asked if he wished an attorney, he waived something, although he isn't sure what, the prepon-

derance is he probably waived his right to a preliminary hearing at that time."

On June 21, 1965, appellant and two other prisoners, one of them, Ernest Charles McCurdy, also charged as a party to· the alleged escape, were brought before the District Court of Jerome County. They were seated by Sheriff Burns, but the exact seating location is a matter of controversy. Appellant testified that he and the two other prisoners were seated at the rear of the courtroom, more than fifty feet from the bench. McCurdy testified the same. Sheriff Burns testified that while he sat at the rear, the three prisoners were placed on the third or fourth bench from the bar. He qualified this by stating "I wouldn't be certain" where the prisoners were seated. McCurdy's mother, who was present and apparently seated in front of them, testified that she was approximately fifty feet from the bench.

First called before the bench was appellant's fellow prisoner, Larry Eugene Shirtz. Appellant and McCurdy remained seated where the sheriff had placed them while Shirtz pleaded guilty and was convicted of receiving stolen property, a felony. Next, McCurdy was called individually before the bench, appellant remaining seated, and after a guilty plea was convicted of the felony of burglary in the first degree. Then appellant, indigent at the time, was called before the bench and, together with McCurdy, was told by the district judge that the information

"does charge that the two of you on or about June 7, 1965, both of you being confined in the county jail, unlawfully and feloniously and by use of force did escape from said county jail, all of which is

1. I.C. § 18–2506 (Supp.1965) "Escape by one charged with or convicted of a misdemeanor.—Every prisoner charged with or convicted of a misdemeanor who is confined in any county jail or other place or who is engaged in any county work outside of such jail or other place, or who is in the lawful custody of any officer or person, who escapes or attempts to escape therefrom, is guilty

of a misdemeanor; however, in cases involving escape or attempted escape by use of threat, intimidation, force, violence, injury to person or property other than that of the prisoner, or wherein the escape or attempted escape was perpetrated by use or possession of any weapon, tool, instrument or other substance, the prisoner shall be guilty of a felony."

contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the State of Idaho."

The judge then asked:

"Mr. McCurdy, do you want to have an attorney or again waive your right to counsel?"

"MR. MC CURDY: I will waive my right to counsel.

"THE COURT: Mr. Bement, do you desire to have an attorney or waive your right to counsel?

"MR. BEMENT: I will waive it.

"THE COURT: You understand what you are doing?

"MR. BEMENT: Yes, sir.

"THE COURT: The record will show that both defendants waive their right to be represented by counsel and elect to proceed without an attorney. The clerk of the court will read this information in full and deliver a copy to each defendant."

The arraignment and conviction of Shirtz, and of McCurdy on the burglary charge, both of which occurred shortly before appellant was brought before the bench, followed a procedure slightly different from appellant's arraignment. When Shirtz, and McCurdy individually (to answer the burglary charge), had stood before the bench to answer the felony charges against them, the judge had informed each in turn that he could appoint an attorney to represent him at public expense. The judge spoke with Shirtz as follows:

"Mr. Shirtz, do you have an attorney to act for you and represent you in this matter?

"DEFENDANT: No, sir.

"THE COURT: Do you desire to have an attorney?

"DEFENDANT: No, sir.

"THE COURT: You are, by law, entitled to have an attorney. If you have funds or property with which to retain one at your own expense you may do so. If you do not have and still desire to have an attorney I can appoint one to represent you at public cost. You don't have to have an attorney; you can waive that right if you want to do so. But you do have the right to be represented by an attorney if you desire. With that explanation do you want an attorney or do you want to waive your right to an attorney?

"DEFENDANT: I will waive it.

"THE COURT: The record will show the defendant waives his right to counsel and elects to proceed without an attorney. The clerk of the court will read the information in full and deliver a copy to you, Mr. Shirtz."

When McCurdy appeared before the bench the following colloquy took place:

"THE COURT: Did you hear my explanation to Mr. Shirtz concerning the rights that a defendant has to be represented by an attorney?

"DEFENDANT: Yes, sir.

"THE COURT: You understand that if you want an attorney and can't afford to retain one of your own I have authority to appoint one at the taxpayer's expense to represent you in this matter. With that thought in mind now do you want to be represented by an attorney or do you want to waive that right and proceed without counsel?

"DEFENDANT: I will waive.

"THE COURT: You want to waive it? Are you sure?

"DEFENDANT: Yes, sir."

Appellant was present in the courtroom, seated where the sheriff had placed him, during Shirtz's and McCurdy's (individual) arraignments and convictions. He testified that, though interested in the proceedings, he was unable to hear the judge's statement to either Shirtz or McCurdy regard-

ing the appointment of counsel at public expense. McCurdy testified that he did not hear the judge's pertinent advice to Shirtz. McCurdy's mother, (apparently seated ahead of the prisoners, towards the front of the courtroom), testified that, though present, she could not hear the judge's advice to Shirtz or to her son. Sheriff Burns testified that he "had no difficulty that morning hearing" the judge, but admitted that he had known the judge for fifteen years, was well acquainted with his voice and quite familiar with felony arraignments.

Appellant was not informed of the nature of the charge, the possible punishments, or the ultimate effect of a plea of guilty. The judge, however, said the following to Shirtz and McCurdy, in turn, and whether appellant heard these statements is subject to the same conflicting evidence as set out above regarding the appointed counsel advice. The judge told Shirtz:

> "The record will show the defendant pleads that he is guilty of the offense charge (sic). Mr. Shirtz, are you aware that by pleading guilty to this charge you plead guilty to every essential element of the crime alleged in the information and you subject yourself to any punishment this court sees fit to mete out up to the maximum prescribed by law? Are you aware of that?
>
> "DEFENDANT: Yes.
>
> "THE COURT: With that understanding you still wish to plead guilty?
>
> "DEFENDANT: Yes.
>
> "THE COURT: The court will accept your plea of guilty."

The judge told McCurdy:

> "Again, Mr. McCurdy, do you understand that by entering a plea of guilty you admit all of the essential elements of the offense charged and subject yourself to any punishment this court deems fit to give you up to the maximum prescribed by law? Are you aware of that?

> "DEFENDANT: Yes, sir.
>
> "THE COURT: You still wish to enter a plea of guilty?
>
> "DEFENDANT: Yes, sir.
>
> "THE COURT: Your plea of guilty will be accepted."

After the habeas corpus hearing, the trial judge found "The preponderance of the evidence is that petitioner [appellant] could have heard such arraignments and probably did."

Appellant was convicted of the felony of escape and sentenced to a five year term in the state penitentiary. On January 19, 1966, appellant filed a petition for a writ of habeas corpus in the District Court of Ada County. On February 2, 1966, appellant's attorney filed a motion to withdraw the guilty plea in the District Court of Jerome County. That motion had not been heard by March 1, 1966, when the District Court of Ada County held a hearing on the habeas corpus petition. After the habeas corpus hearing, based upon findings in fact, the trial judge made conclusions of law that the District Court of Jerome County had acted within its jurisdiction regarding appellant's conviction and sentence; and that appellant's proper remedy lay in the motion he had made in the District Court of Jerome County for permission to withdraw his guilty plea. The judge then ordered the habeas corpus writ quashed and petitioner remanded to the penitentiary. This is an appeal from that judgment.

The questions raised by appellant's assignments of error can be condensed into one basic issue: within the facts of this case, did the trial court's failure to inform appellant during arraignment that if he was indigent, but desired an attorney's services, the court was duty bound to appoint an attorney compensated entirely from public funds who would assist him; and the court's further failure to apprise appellant, standing then before the bench without counsel, of the nature of the charge against him, the elements necessary to ground his conviction

on that charge and the possible consequences of his plea of guilty, constitute a sufficiently serious deprivation of appellant's fundamental rights to require that this court set aside his conviction?

 The district judge presiding at the arraignment had a statutory duty to "inform" appellant "that it [was] his right to have counsel before being arraigned." I.C. § 19–1512.[2] Since it was the court's further duty to "assign counsel" if appellant "desire[d] and [was] unable to employ counsel," ibid., the judge owed appellant the duty to explain that his statutory right encompassed the assistance of an attorney compensated at public expense. To satisfy the statute's requirements, it is essential that the court first advise an accused that if he be indigent an attorney will be assigned to defend him without cost to him, before inquiring whether he wishes to waive his statutory rights to counsel. State v. Thurlow, 85 Idaho 96, 375 P.2d 996 (1962). In *Thurlow*, this court said:

"It is incumbent upon the court, upon an arraignment for an offense such as is here involved [a felony], to ascertain if a defendant is financially capable of hiring counsel and to advise the defendant in order that he may intelligently respond to the court's interrogation upon this subject. Unless informed of these statutory rights it is conceivable that defendant would not know of their existence and his inability to employ counsel would operate to deny him the opportunity to assert defenses to the charge in violation of his right of due process." 85 Idaho 103, 375 P.2d 1000.

See State v. Poglianich, 43 Idaho 409, 252 P. 177 (1927); cf. Idaho Const. art. I, § 13; State v. Lawrence, 70 Idaho 422, 220 P.2d 380 (1950); State v. Montroy, 37 Idaho 684, 217 P. 611 (1923).

█ The right of an indigent accused felon at a state court trial to be assisted by court appointed and compensated counsel, and his concomitant right to be apprised by the court of its duty to provide counsel for him, cf. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Lyles v. United States, 346 F.2d 789, 791 (5 Cir. 1965), is also, and primarily, guaranteed by the federal constitution. U.S.Const. Am. VI; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Doughty v. Maxwell, 372 U.S. 781, 83 S.Ct. 1106, 10 L.Ed.2d 139 (1963); 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964).

Respondent admits that appellant was denied his statutory right to be informed by the trial judge of the court's duty to assign him counsel at public expense. However, respondent contends, this error was harmless and did not deprive appellant of his constitutional right to counsel since when he appeared before the bench at his arraignment, appellant knew that if he was indigent and desired the assistance of counsel at public expense, the court was required to so provide. Thus, respondent argues, appellant intelligently waived his right when he responded "I will waive it" to the court's question "do you desire to have an attorney or waive your right to counsel?"

Respondent's contention must draw its only support from the courtroom circumstances, related above, preceding appellant's arraignment. Respondent points out that appellant was in the courtroom when the trial judge, before whom he was subsequently arraigned, told Shirtz, charged with receiving stolen property, and then McCurdy, when he answered a burglary charge, that the court would provide an attorney at public expense for each one of them if they were indigent. Respondent argues that appellant could have overheard this advice,

2. § 19–1512. *"Right to counsel.*—If the defendant appears for arraignment without counsel he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel the court must assign counsel to defend him."

and notes the finding made by the judge at the hearing below: "The preponderance of the evidence is that petitioner could have heard such arraignments and probably did."

■ First, it must be pointed out that the logic underpinning respondent's argument is by no means unassailable. For, assuming arguendo that appellant did overhear the judge's pertinent statements to Shirtz and McCurdy, one must also consider that they faced charges for crimes different from the escape felony of which appellant stood accused—Shirtz, receiving stolen property; McCurdy, burglary. The judge's failure to inform appellant that he, too, had a right to court compensated legal assistance, may be interpreted as the very stroke which convinced appellant that his predicament, facing a charge of escape, different from that of Shirtz's and McCurdy's, was not such as to be accorded the privilege of an attorney at public expense. Cf. State v. Thurlow, supra, 85 Idaho 103, 375 P.2d 996; State v. Poglianich, supra, 43 Idaho 414, 252 P. 177.

However, there is no need to draw inferences from the circumstantial evidence upon which respondent relies to prove appellant's waiver of his constitutionally guaranteed right to counsel. The evidence itself cannot withstand the penetrating requirements of the standard of proof necessary to establish waiver under the controlling law.

■ "The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314, 317 (1966). "We have held the principles declared in Johnson v. Zerbst [standard for waiver in a federal prosecution] equally applicable to asserted waivers of the right to counsel in state criminal proceedings." Carnley v. Cochran, supra, 369 U.S. 515, 82 S.Ct. 890, 8 L.Ed.2d 77 (1962). See Jackson v. Maxwell, (unreported opinion), Civil No. 1–66–35, D.Idaho May 20, 1966; cf. State v. Thurlow, supra.

The federal standard of proof required to establish waiver of the right to counsel was first comprehensively declared in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), referred to in the above passage from Carnley v. Cochran,

The court said:

"It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights [citing case] and that we 'do not presume acquiescence in the loss of fundamental rights.' [citing case] A waiver is ordinarily an intentiona1 relinquishment or abandonment of a known right or privilege." 304 U.S. 464, 58 S.Ct. 1023.

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in—which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." 304 U.S. 465, 58 S.Ct. 1023.

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." 304 U.S. 467, 58 S.Ct. 1024.

On June 13, 1966, in an analogously relevant case concerning the right to counsel during police interrogation, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court announced the following rules regarding "the restraints society must observe consistent with the Federal

Constitution in prosecuting individuals for crime."

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. [noting cases] As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." 86 S.Ct. 1627.

■ The right to counsel, "the most pervasive right of an accused," [3] has been accorded singular significance by federal courts. So important is the right, and so strong the presumption against its waiver, that a trial judge's clear and recorded statement of the right to an accused felon before inquiring whether the accused wishes to "waive" the right, followed by the accused's immediate affirmative "waiver," will not necessarily compel a finding of intelligent waiver. See United States ex rel. Brown v. Fay, 242 F.Supp. 273 (S.D.N.Y.1965) cited in Miranda v. State of Arizona, supra; United States ex rel. Noll v. Fay, 219 F.Supp. 262, 267–268 (S.D.N.Y.1963); cf. Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966); Carnley v. Cochran, supra; Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957);

Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Shawan v. Cox, 350 F.2d 909 (10 Cir. 1965); Wright v. Dickson, 336 F.2d 878 (9 Cir. 1964); see also State v. Lawrence, supra.

In Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), the court, after quoting the second extract from Johnson v. Zerbst set out above (304 U.S. 465, 58 S.Ct. 1019; p. 61 infra), stated:

"To discharge this duty ['protecting duty' of a trial judge to fully safeguard the right to counsel] properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, * * *. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." 332 U.S. 723–724, 68 S.Ct. 323, 92 L.Ed. 311.

■ One element of the "penetrating and comprehensive examination of all the circumstances" demanded by the trial judge's "protecting duty" might be examined, of course only for purposes of illustration, with regard to the facts presented by the instant case: "the nature of the charges, [and] the statutory offenses included within them," Von Moltke v. Gillies, supra. Appellant was charged with a felony offense, escape while imprisoned for

3. W. V. Schaefer, "Federalism and State Criminal Procedure", 68 Harv.L.Rev. 1, 8 (1956).

a misdemeanor, the elements of which necessarily included that the accused have utilized means of force and violence to commit the escape. I.C. § 18–2506. An escape while imprisoned for a misdemeanor which does not include force and violence is itself only a misdemeanor. Ibid. Whether appellant actually used force to enable an escape, if he did in fact attempt an escape, is, of course, beside the question here. Of crucial importance, however, is the fact that the trial judge did not explain this distinction to appellant other than his reading of the pro forma information, and the information, as read, contained not one factual element regarding the means by which the alleged escape was perpetrated. "Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree." I.C. § 19–2502, and the better procedure would be to take evidence, at a recorded hearing, regarding the circumstances of the alleged offense. Cf. I.C. §§ 19–2515 and 2516.

█ Respondent contends that the issues raised on appellant's habeas corpus proceeding are not ripe for judgment, since appellant's motion to withdraw his plea of guilty in the sentencing court had not been determined at the time of the hearing below. I.C. § 19–4212 directs the court, in a habeas corpus proceeding "to dispose of such party [a petitioner] as the justice of the case may require." The fact that appellant has a dual remedy cannot frustrate his attempt to effectuate one of the two remedies.

█ The judgment is reversed and the cause is remanded with directions to the trial court to enter an order directing the warden of the state penitentiary to release and discharge appellant, unless the prosecuting attorney of Jerome County obtains a bench warrant for the further prosecution of appellant prior to remittitur herein.

McFADDEN, C. J., and TAYLOR, SMITH, and SPEAR, JJ., concur.