451 P.2d 1014

**Jess P. LOCKARD, Plaintiff-Appellant,**

v.

**STATE of Idaho, Defendant-Respondent.**

No. 10258.

Supreme Court of Idaho.

March 21, 1969.

Allen R. Derr, Boise, for plaintiff-appellant.

Allan G. Shepard, Atty. Gen., Mack A. Redford, Deputy Atty. Gen., State of Idaho, Boise, for defendant-respondent.

SPEAR, Justice.

At the outset we note that this cause was originally improperly titled. The application for post-conviction relief was instituted by Jess P. Lockard "Prison Number 12122" as "movant," contrary to I.C. § R7–101; Idaho Supreme Court R. 5. Consequently, the title of this cause has been reformed. Epperson v. Howell, 28 Idaho 338, 341, 154 P. 621 (1916); Shaw v. McDougall, 56 Idaho 697, 699, 58 P.2d 463 (1936).

On October 11, 1966, while serving a 90-day sentence for a misdemeanor, Jess P. Lockard (appellant) escaped from the Clearwater County Jail. While effecting his escape, Lockard pushed one William Blevins, a custodian, in such a fashion that Blevins fell back, hitting his head and causing a wound of minor proportions.

Lockard fled to the State of Wisconsin. He was returned to Idaho in the custody of Ralph E. Haley, prosecutor, and Leroy Altmiller, Sheriff of Clearwater County. During the return trip there was some conversation between the three individuals relevant to the pending escape charge and some further discussion in regard to burglary charges which Haley contemplated bringing against appellant. Both the sub-

stance and implications to be drawn from these conversations are in dispute.

On November 14, 1966, appellant was charged with two felonies, escape and receiving stolen property. An attorney was appointed to represent appellant at his preliminary hearing, but the hearing was waived.

On November 15, 1966, appellant appeared in District Court. At that time he waived his right to be represented by counsel and pleaded guilty to both charges. He likewise waived his right to a presentence investigation. The trial court, believing the waiver and pleas to be intelligently made and uncoerced, immediately passed sentence of five years on each charge, the sentences to run consecutively, for a total of ten years.

In asserting the basic assignment of error that the trial court erred in denying post-conviction relief, appellant alleges several errors in both the original proceedings and the subsequent post-conviction hearing. We shall deal with these issues in order.

### I.

Appellant first alleges that there was error in allowing the same judge to preside over both the original trial and the subsequent post-conviction proceedings.

This allegation of error is raised for the first time on appeal. As such, this court will not consider it. State v. West, 92 Idaho 728, 449 P.2d 474 (1969); City of Lewiston v. Frary, 91 Idaho 322, 420 P.2d 805 (1966). Furthermore, the post-conviction act requires that the hearing be had before the *same court* in which conviction took place. I.C. § 19–4907. If appellant felt he could not obtain a fair hearing before the *same judge*, his remedy was to disqualify the judge pursuant to I.C. § 1–1801(4).

### II.

Appellant next contends that the pleas of guilty to both the escape charge and the receiving stolen property charge were coerced by the prosecuting attorney.

This is a conclusory statement. The real issues are: (1) What type of "coercive" circumstances will render a plea of guilty void, and (2) Did such circumstances exist here?

Idaho has long adhered to the principle that a plea of guilty must be made freely, voluntarily and with an understanding of the consequences attendant upon such a plea, i. e., State v. Peterson, 42 Idaho 785, 248 P. 12 (1926); State v. Arnold, 39 Idaho 589, 229 P. 748 (1924). A plea of guilty is deemed coerced only where it is improperly induced by ignorance, fear or fraud. One test of whether or not there has been improper coercion depends on whether an innocent person would have pleaded guilty under the same circumstances. Pennington v. Smith, 35 Wash.2d 267, 212 P.2d 811 (1949).

The implication of appellant's assignment of error is that his plea of guilty was coerced by the prosecutor's promise to forego charging appellant with the commission of a burglary if he would plead guilty to receiving stolen goods. However, it is well established that a plea of guilty obtained under such circumstances is not *per se* coercive. Martin v. United States, 256 F.2d 345 (5th Cir. 1955); Cortez v. United States, 337 F.2d 699 (9th Cir. 1964); Gilmore v. People of State of California, 364 F.2d 916 (9th Cir. 1966); Application of Buccheri, 6 Ariz.App. 196, 431 P.2d 91 (1967); Commonwealth ex rel. Bostic v. Cavell, 424 Pa. 573, 227 A.2d 662 (1967); Brown v. Beto, 377 F.2d 950 (5th cir. 1967).

Furthermore, in post-conviction proceedings, the petitioner has the burden of proving the allegations which he contends entitle him to relief under the Act by a preponderance of the evidence. Tramel v. State, 92 Idaho 643, 448 P.2d 649, 652 (1968). Petitioner's burden here was to prove coercion and he has failed. The evidence does not support a contention that "plea-bargaining" was engaged in. The

prosecutor was called to the stand in the post-conviction proceedings and described his conversations with the appellant as follows:

"Q Was there any discussion between yourself and Mr. Lockard during this trip [back from Wisconsin] pertaining to any of these charges [?]

"A Yes, Mr. Lockard had been telling the sheriff and I, in a visiting manner of where he had been and what all he had been doing since he left here, then he made the statement that the only reason he escaped he got to thinking that if we tried and convicted him of the 2 burglaries and the statutory rape, and there was one or two burglaries in Lewiston that they were anticipating trying him on, and if he got tried for those—and then he told us he was, I believe, on probation out of California somewhere—he would be in trouble with the California law, that he would be in the penitentiary for more than the rest of his life, he felt he had nothing left to— no hope left, and so that he pulled the escape. He told me he wasn't guilty of those burglaries, and he wasn't going to get convicted of them. I advised him again, as I had before, that I was sure we had sufficient evidence to convict him. He again asserted he wasn't guilty, did not commit them, that he knew who did, that the person who did it, as I recall, stayed with him a day or 2 beforehand and went out and pulled those burglaries and left the things with him and gone on, that he knew that this—the items were stolen when the man brought them to him. He read about it the next morning in the paper, and that if I had charged him with receiving stolen property he would have plead guilty, no problem, because he did receive stolen property, and he knew it, and he would have plead to this. At that time I said well, I might

back off and charge him with receiving stolen property, but I felt I would also have to charge him with escape, because a man was injured. He said, 'Well, if you want to do that, I'm guilty of that and I'll plead to it.' This was about all that was said on that."

The only refutation of this version of the conversation by the appellant appears in the earlier testimony he gave on cross-examination:

"Q I believe your testimony was that you entered a plea of guilty to this receiving charge because of the threats of the prosecutor?

"A Yes, sir.

    *      *      *      *      *      *

"A * * * we were coming back, I forget the name of the town, we stopped and the sheriff got out of the car and went into a service station, and at that time the prosecutor said, 'I'm thinking seriously, but I'm not saying I'm thinking out loud, that I would drop these charges down to possession of stolen property, or receiving stolen property,' I don't recall which it was, if I would plead guilty, *and I said I would think about it.*" (emphasis added)

If the appellant's testimony were believed to the total exclusion of the prosecutor's testimony, the most the former's version would tend to show is that an offer was made. The testimony does not show that a bargain was struck. There is no record of *any* subsequent conversations of any nature between the appellant and the prosecutor. The fact is that the appellant was charged *only* with receiving stolen property and was *never* charged with burglary. In view of all the testimony and in light of appellant's equivocal answer, the reasonable implication is that the prosecutor was convinced the appellant had not in fact committed the crime of burglary.

Perhaps it can be conceded that the appellant was subjected to a type of "co-

ercion." The question, however, is whether the degree or type of "coercion" here was impermissible. As the Arizona State Court of Appeals said:

"The very fact that a person has been arrested and brought forcibly before the court for an arraignment at which he must publicly declare his guilt or innocence obviously runs counter to the fondest wishes of the accused. Most defendants can think of something better to do. When a defendant is promised a reduction in charge or the dropping of several counts of a multi-count information or indictment, to say that he is not induced by 'threat or promise' is to take some liberty with the English language and yet this is exactly the conclusion reached by courts." Application of Buccheri, 6 Ariz.App. 196, 431 P.2d 91, 98 (1967).

The term "plea-bargaining" is well chosen. It suggests that the defendant well understands that he may be convicted of some crime. On the other hand the term presumes that the prosecutor believes he can obtain a criminal conviction. The difference of opinion usually arises as to what crime may be proven, i. e., first degree murder, or second degree murder, or perhaps only involuntary manslaughter? There are also questions of time, expense, effort and delay for both parties involved. Not unlike civil litigants who face similar prospects, the parties often choose to compromise. To be sure, there are substantially different implications to be drawn from a criminal conviction than from the loss of a civil action, but many of the same elements are at work. In either case, if the parties are both fully cognizant of the facts and hazards of choosing one course of action over another, their agreement should stand, even though it may be less than the most favorable result conceivably obtainable by either. This is the essence of compromise. It is distinguishable from the situation where one party unilaterally admits all the facts which the opposing party can use to his advantage as he chooses. Thus it was that the author of a noted law review article observed:

"A guilty plea and a confession are analogous but distinct concepts. A confession is an averment that certain facts occurred, and is used as evidence in a fact-finding proceeding—trial—whose whole purpose is to determine whether the facts actually occurred. The nature of the trial proceeding requires that consideration be given to evidence, such as a confession, only to the extent that it has probative value, and, therefore, strict rules of admissibility have been formulated. On the other hand, the guilty plea is not necessarily an admission that the defendant engaged in a criminal incident, but is a conclusion that there is sufficient evidence for a judge or jury to find that he did so. As a result of this distinction, the guilty plea gives rise to a procedure for disposition of the case that is different from trial. The court is no longer concerned with whether given facts occurred, but only with whether the defendant has made an informed determination that a judge or jury could find such facts on the prosecution's evidence. In this sense, the plea procedure approximates the result likely to be achieved by trial, but by a different method; the considerations which govern the acceptance of the guilty plea are different from those determining the admissibility of confessions. In contrast to a confession, the reliability of a guilty plea is measured in terms of the substantiality of the prosecution's case. This determination might be left to defendant and his counsel, but the possibility of a plea bargain suggests the need for judicial scrutiny of all guilty pleas to protect against overreaching of defendants by prosecutors. If the judge concludes, after asking the prosecutor for a summary of the evidence available for trial, that there is a substantial likelihood that the prosecutor could sustain his case, the guilty plea should ordinarily be accepted when the defendant and the prosecutor have made a determination

that it is in their respective interests to dispose of the case by plea, and the defendant has an understanding of the nature of the charge, the possible penal consequences, and the recommendatory nature of the prosecution's promise. Under these circumstances, it seems proper for the prosecutor in his informed discretion to enter into an agreement with the accused. Moreover, it does not seem that the defendant is overborne if, after considering the prosecution's evidence with the help of counsel, he concludes that it is in his interest to accept a given result rather than await the uncertain outcome of trial." D. Vetri, Guilty Plea Bargaining; Compromises by Prosecutors to Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 884–85 (1964).

One of the reasons why the availability of guilty pleas should not be impaired is sparing the accused and his family the embarrassment of a full blown trial when it is unnecessary and undesirable.

Therefore, we conclude that there is a need and desirability for guilty pleas obtained under the proper conditions of fairness and forthrightness, at least on the part of the prosecution. Certainly, fairness to the accused and understanding on his part must ultimately be insured by the court.

### III.

Appellant's next assignment of error is that the court erred in allowing the appellant's guilty plea to stand in spite of the fact that the appellant said he didn't know the property was stolen.

▮▮▮▮ A plea of guilty has the same force and effect as a judgment rendered after a full trial on the merits. State v. Compton, 28 N.J.Super. 45, 100 A.2d 304 (1953). By pleading guilty the appellant waived all defenses which might have been raised other than the defense that the information failed to state a public offense or the defense that the court did not have jurisdiction. State v. Dawn, 41 Idaho 199, 239 P. 279 (1925); State v. Grady, 89 Idaho 204, 404 P.2d 347 (1965).

"A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).

In the case at bar, the defendant was fully advised of his right to an attorney and the opportunity to present a defense, as well as the consequences of a guilty plea. The appellant refused both the right to plead not guilty and the right to an attorney in open court. Only after the court was satisfied that the appellant did indeed want to waive his rights, and was further satisfied that he was doing so intelligently, did the court accept the plea. The colloquy between the court and the appellant on this point is most enlightening:

"MR. LOCKARD: Uh, your Honor, I have been to court quite a few times in my life and I know just about the proceedings of a court and I know what's going to happen to me and I know I am going back to the penitentiary. I don't see no sense in having a lawyer when I can get you to sentence me now and just save a whole bunch of time in the county jail and I can go get my time started. Cause all the time I spend up here is just dead time.

"THE COURT: Well, this, Mr. Lockard, I grant you, is true. But I also want to be positive that you know wherefor you speak, because if you don't we are just going through a procedure for nothing because if you file a habeas corpus proceeding and it comes out that you should have had counsel and didn't have, we have just spun our wheels and we go all through this again.

"MR. LOCKARD: I know that.

"THE COURT: All right. Now you have been in court before—how many times to your recollection?

"MR. LOCKARD: Approximately nine or ten times on criminal charges.

"THE COURT: All right. Then you are fully aware of the procedure?

"MR. LOCKARD: Yes, Sir.

"THE COURT: And you know that the nature and extent of the punishment—What are you charged with here?

"MR. LOCKARD: Escape from jail and receiving stolen property.

"THE COURT: All right. And you know these are both felonies and carry a prison sentence of several years?

"MR. LOCKARD: Yes, Sir.

"THE COURT: All right.

"MR. LOCKARD: They carry a one-to-five.

"THE COURT: They both carry a one-to-five? I haven't looked at the statute on it because this is the first time I have seen these Informations. And it is your impression these are one-to-five charges, is that right?

"MR. LOCKARD: Yes, Sir. What I read out of law books that I have got myself.

"THE COURT: All right, I won't question this because before I sentence you, I will look at the statutes covering these, but I wanted to be sure that you knew what you were up against. * * *"

It is obvious the court was dealing with an "old professional" criminal—one well informed in criminal law and procedure.

■ Next, the appellant waived his statutory right to a pre-sentence investigation and was duly sentenced. At that point he was, in legal contemplation, tried, convicted and sentenced. Only subsequently, in further conversation with the court, did appellant state that he did not know the property was stolen. He did, however, admit that he retained the property after he discovered it was stolen. Such statements, arising after conviction, were too late to avoid the effect of the plea of guilty.

■ It suffices to say that the appellant's statements did not raise any absolute defense so as to *require* the court, in the sound exercise of discretion, to set the judgment of conviction aside. However, since withdrawal of a guilty plea, while the matter is still pending before the court, is liberally granted in Idaho, the court could, in its discretion, have allowed the appellant to change his plea. State v. Raponi, 32 Idaho 368, 182 P. 855 (1919); State v. Lawrence, 70 Idaho 422, 220 P.2d 380 (1950); State v. Martinez, 89 Idaho 129, 403 P.2d 597 (1965); *This is exactly what the court did.*

"THE COURT: I tell you what I am going to do with you, Mr. Lockard, and I would strongly suggest you talk to counsel * * * and if, after consultation with him, you want to withdraw this plea, I will listen to it.

"MR. LOCKARD: No, your Honor, I don't want it withdrawn.

"THE COURT: You don't?

"MR. LOCKARD: No, Sir.

And in closing the proceedings, the last thing the court said was:

"THE COURT: All right—we are in recess. Again, to reiterate, if you change your mind and want to withdraw this plea, let me know.

"MR. LOCKARD: Your Honor, I would like to know, I am still sentenced to the penitentiary when they come to get me they can take me can't they?

"THE COURT: Yes, Sir.

"MR. LOCKARD: That is what I wanted to know.

"THE COURT: But if you want to change your plea before they get you, before the traveling guard picks you up, or at any time, this court will listen to it.

"MR. LOCKARD: I don't want to change it."

■ Therefore, the appellant was given ample time to reflect and to change his plea before he went to prison, even though he had no *right* to change his mind. Under the circumstances and at this late date the appellant has no basis for complaint. See State v. Lawrence, supra; United States v. Orlando, 327 F.2d 185 (6th Cir. 1964).

### IV.

By assignments 5 and 8, appellant alleges error in being convicted of felony escape rather than misdemeanor escape.

Initially it must be noted that no prejudice is shown by this assignment. Appellant was charged with escape by means of force and violence while in custody on a misdemeanor charge, all the elements necessary to satisfy I.C. § 18–2506.[1] The information read, in part:

"* * * That the said Jess P. Lockard, on the 11th day of October, 1966, at Orofino, in the County of Clearwater, State of Idaho, then and there being confined in the County Jail of Clearwater County, State of Idaho, convicted of a misdemeanor did then and there escape by use of force, violence and injury to a person, to-wit: Bill Blevins, a felony, all of which is contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the State of Idaho."

None of the evidence in the post-conviction proceedings, not even the appellant's own testimony, refutes the fact that force was used against Blevins, or that such force, while in custody on a misdemeanor conviction does not constitute a felony. Furthermore, what is pointed out previously herein (supra II), concerning waiver of defenses and the effect of a plea of guilty, is equally applicable here.

Appellant, however, questions whether he made an intelligent waiver of his rights with the regard to the escape charge and cites Bement v. State, 91 Idaho 388, 422 P.2d 55 (1966). The court in *Bement* was primarily concerned with whether the appellant there had effectively waived counsel, no question of which arises here. The court also noted, however, that Bement was not fully informed of the acts which he was charged with committing, either by the judge or the information. Bement was charged by a *pro forma* information which could have provided the basis for either a misdemeanor conviction or a felony conviction, thus placing on the court the burden of determining which offense was committed. Appellant in the case at bar was charged only with felony escape and ample facts were alleged to sustain that charge.

### V.

Appellant alleges that the sentence imposed was improper and excessive.

In sentencing the appellant on the two separate counts of receiving stolen property and felony escape, the court concluded that the sentences should run consecutively rather than concurrently. The following language of the court is cited as critical:

"THE COURT: All right. The sentence on the second count does not start, however, until the sentence on the first one has terminated. This then becomes consecutive, but as I read the statute under 18–2505, this sentence is to start upon the termination of 18–4612—stolen property. * * *"

Both parties to this case devote some argument to the question of whether I.C. § 18–2505 [2] or I.C. § 18–2506 is applicable to

---

1. "18–2506. Escape by one charged with or convicted of a misdemeanor.—Every prisoner charged with or convicted of a misdemeanor who is confined in any county jail or other place or who is engaged in any county work outside of such jail or other place, or who is in the lawful custody of any officer or person, who escapes or attempts to escape therefrom, is guilty of a misdemeanor; however, in cases involving escape or attempted escape by use of threat, intimidation, force, violence, injury to person or property other than that of the prisoner, or where
in the escape or attempted escape was perpetrated by use or possession of any weapon, tool, instrument or other substance, the prisoner shall be guilty of a felony."

2. "18–2505. Escape by one charged with or convicted of felony.—Every prisoner charged with or convicted of a felony who is confined in any jail or prison including the state penitentiary for a term of less than life, or who while outside the walls of such jail or prison in the proper custody of any officer or per-

the facts of this case and whether the one which is applicable requires a sentence to run consecutively.

Stated briefly, I.C. § 18–2505 provides that one who escapes while *in custody* on a felony *charge* or felony *conviction,* commits a felony. An I.C. § 18–2505 conviction results in a new sentence which will *begin* at the time the defendant would otherwise have been released. I.C. § 18–2505 has no application to the facts in this case because prior to his escape appellant was neither convicted of, nor charged with, a felony.

█ I.C. § 18–2506, quoted supra, is the escape with which the appellant was charged by the terms of the information. Appellant was in custody on a misdemeanor conviction. His escape would have also been a misdemeanor but for the fact that it was effected by means of force. It was, therefore, a *felony* escape. A violation of I.C. § 18–2506 does not in and of itself require consecutive sentencing, as does I.C. § 18–2505, nor does I.C. § 18–2506 prohibt consecutive sentences.

After determination of the crime committed, the next step in the sentencing procedure is to look to the penalty. Where a felony does not carry its own sentence, the general provision of I.C. § 18–112 [3] is applicable. Therefore, this section applied to both felonies which the appellant committed. Thus appellant was subject to imprisonment for a period of up to five years on each count.

█ Then and only then was the question properly raised as to whether these sentences should run concurrently or consecutively. Prior to sentencing, the appellant stood convicted of two crimes, neither one of which had had sentence passed upon it. At that point the court had no discretion and was compelled by the terms of I.C. § 18–308 [4] to make the terms run consecutively as indeed it did.

The only error committed by the trial judge in the sentencing process was to refer to I.C. § 18–2505 as the crime committed, rather than I.C. § 18–2506. This was a simple error which in no way prejudiced the appellant since a conviction under either statute would, in conjunction with the other conviction in this case, have resulted in the imposition of consecutive sentences of up to five years each.

█ Appellant complains that the trial court did not exercise discretion in the sentencing process. This is not borne out by the facts in this case. The only discretion available to the judge, as pointed out above, was the length of the sentence to be imposed on each count. It is readily apparent from the record that the appellant knew he was being sentenced to two consecutive five-year terms and that that was the sentence the court intended to impose. The court made it clear to the appellant that, in the former's opinion, if the appellant wanted a lesser sentence he would have to behave himself in prison and thus obtain an earlier parole through the Board of Corrections:

"THE COURT: Now, under our sentencing act, I sentence you for an indeter-

son, or while at work in any factory, farm or other place without the walls of such jail or prison, who escapes or attempts to escape from such officer or person, or from such factory, farm or other place without the walls of such jail or prison, shall be guilty of a felony, and upon conviction thereof, any such second term of imprisonment shall commence at the time he would otherwise have been discharged."

3. "18–112. Punishment for felony.—Except in cases where a different punishment is prescribed by this code, every offense declared to be a felony, is punishable by imprisonment in the state pris-

on not exceeding five years, or by fine not exceeding $5,000, or by both such fine and imprisonment."

4. "18–308. Successive terms of imprisonment.—When any person is convicted of two or more crimes before sentence has been pronounced upon him for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction must commence at the termination of the first term of imprisonment to which he shall be adjudged, or at the termination of the second or other subsequent term of imprisonment, as the case may be."

minate period and the Prison and Parole Board determines actually how much time of that you will serve. Are you familar with this?

"MR. LOCKARD: Yes, Sir.

"THE COURT: All right. It has to run consecutive. In other words, when you finish whatever the Board down there, and of course that is up to them—if they want to terminate it earlier they can do anything they want, but under the law I am bound to sentence you and then they determine the actual period you shall serve, but it cannot be more than I set down.

"MR. LOCKARD: Not more than ten years all together.

"THE COURT: This is it. It cannot be more than ten years. * * * I will * * * sentence you * * * subject, however to a determination by the State Prison and Parole Board, or other appropriate agency, as the actual time you will spend * * *. * * * Do you have anything you want to tell me at this time? Further?

*     *     *     *     *     *

"MR. LOCKARD: I would like to just get it on the record so that it will be there when I do go before the Board that they have the power to terminate both sentences.

"THE COURT: This is a matter of state law, it is nothing I have to put on the record, or that you have to put on the record. This is entirely within the scope of their authority and they can do with you as they see fit, but not to exceed, unless you try to escape again, then you are faced with the same thing, you see. Upon the two charges, I am sending you down on, that maximum is ten years, and I would be startled no end to hear that you served that part of it because evidently you are willing to have a good record in the penitentiary. * * * "

## VI.

Appellant complains that he was not granted a hearing on mitigation.

This allegation has no basis in fact. No such hearing was requested. Appellant was given an opportunity for a pre-sentence investigation, but also waived that:

"THE COURT: All right, be seated. Mr. Lockard, ordinarily I am, or I should say, it is mandatory under statute that I take forty-eight hours for investigation before I sentence you. I plan on being down here again on the 29th of November. I will leave this afternoon and not return until that time. You have the privilege, if you wish, of waiving that time, but you see it gives me no information on your background or anything of that nature except what the State can give me now. So I want you fully informed before you waive that period if you intend to waive it.

"MR. LOCKARD: Sir, I want to waive it.

"THE COURT: All right.

"MR. LOCKARD: I understand it.

"THE COURT: In other words, you want to be sentenced at this time?

"MR. LOCKARD: Yes, Sir."

■ A man accused of a crime has a right to defend himself, a right to be represented by counsel, and a right to a delay in sentencing. That same man likewise has a right to plead guilty in non-capital cases, a right to waive counsel, and a right to waive delay in sentencing.

■ Under the facts and circumstances of this case we conclude that the appellant did indeed intelligently waive his rights to defend himself, and consequently denial of post-conviction relief is *affirmed*.

DONALDSON, J., and HAGAN and LODGE, District Judges, concur.

McQUADE, J. concurs in the conclusion.