662 P.2d 548

**The STATE of Idaho, Plaintiff-Respondent,**

v.

**Christopher BEARSHIELD, aka Raymond Hoover, Defendant-Appellant.**

**No. 13550.**

Supreme Court of Idaho.

April 27, 1983.

Eli Rapaich, of Rapaich & Knutson, Lewiston, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

## I.

Christopher Bearshield was charged with murder in the first degree by an information filed on February 21, 1973, in connection with the shooting death of Harry Walks-On-Top. Bearshield appeared with counsel and entered a plea of not guilty to the charge. Later Bearshield, through his attorney, entered a plea of guilty to the crime of murder in the second degree. The court, the Honorable John Maynard presiding, accepted the plea. Later, at sentencing, Bearshield testified that he had not intended to kill Walks-On-Top, in view of which Judge Maynard questioned Bearshield as to the voluntariness of his plea. Being satisfied that it was voluntary, the court on March 30, 1973, sentenced Bearshield to an indeterminate term not to exceed twenty-five years in the custody of the Idaho Board of Corrections. No appeal was taken.

On August 25, 1977, Bearshield filed a *pro se* application for post-conviction relief. Retained counsel filed an appearance as Bearshield's counsel on April 30, 1979. Thereafter counsel filed an amended petition on May 18, 1979. At this time a motion for a change of judge was also filed. The prosecution interposed no response on the motion, and it was not passed upon until the amended petition came on to be heard before Judge Maynard on June 13, 1979. The motion was rather summarily denied, as was Bearshield's petition for post-conviction relief. Bearshield appeals.

## II.

A threshold challenge raised by Bearshield is whether Judge Maynard erred in not accepting the disqualification, which ruling was based upon the stated reason: "Well, the motion wasn't timely made in that the Court certainly has acted in this case from its very inception and I think the only way the matter could be shown now is by a showing of some actual bias, so the motion is denied." Tr., p. 3. This disposition of the motion was the first contested proceeding in Bearshield's action for post-conviction relief.

A party to an action is entitled to make one disqualification without cause pursuant to I.R.C.P. 40(d)(1). Although Bearshield's motion to disqualify Maynard was brought "pursuant to the provisions of

**678**

I.C.R. 25 [1] and I.R.C.P. 40(d)(2)," Judge Maynard treated it as a motion calling for an automatic disqualification.

Judge Maynard's stated reason for not honoring the disqualification, that he had been in the case from its inception, can only be understood as founded upon his view that the post-conviction proceeding was a continuation of the criminal action at which he had presided. It is clear that he had not been required to nor did he pass upon any contested motions prior to the filing of the disqualification motion by Bearshield's counsel. We believe, therefore, that he erred in continuing to preside in the post-conviction relief action.

As was noted in *Clark v. State,* 92 Idaho 827, 830, 452 P.2d 54, 57 (1969): "An application for post-conviction relief is a special proceeding, civil in nature. Idaho Const., art. 5, § 1; Uniform Post-Conviction Procedure Act, I.C. §§ 19–4901(b), 19–4907; *Pulver v. State,* 92 Idaho 627, 448 P.2d 241 (1968)." Bearshield's application for post-conviction relief was an entirely new proceeding, distinct from the criminal action which led to his conviction. *See* I.C. § 19–4901; Idaho Const., art., 5, § 1; *State v. Bitz,* 93 Idaho 239, 241, 460 P.2d 374, 376 (1969). *See also Halliday v. United States,* 380 F.2d 270, 272 (1st Cir.1967), *aff'd on other grounds,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), *reh'g denied,* 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1970).

"[T]he post-conviction act requires that the hearing be had before the *same court* in which the conviction took place. I.C. § 19–4907. If appellant felt he could not obtain a fair hearing before the *same judge,* his remedy was to disqualify the judge . . . ."
*Lockard v. State,* 92 Idaho 813, 815, 451 P.2d 1014, 1016 (1969) (emphasis in original).

It has been suggested that Bearshield's motion for a change of judge was not timely filed because it was not filed within five days after he received notice of the hearing on the first contested motion in the case, citing I.R.C.P. 40(d)(1). In view of the record of events that occurred in this case, we cannot agree.

On February 15, 1979, Bearshield filed *pro se* a motion for appointment of counsel and a motion for leave to supplement his August 25, 1977, application for post-conviction relief. On March 20, 1979, the court ordered a hearing set for April 25, 1979. It does not appear from the record that this order was served on the then uncounseled Bearshield. The same order provided that Bearshield "be delivered to the Sheriff of Nez Perce County to be held for said hearing," and Bearshield was so made to appear. Tr., p. 23. Bearshield of course, was not exactly a free agent, being in custody of the Idaho State Correctional Institution in Boise. Although there is no record of counsel being appointed for Bearshield, the court minutes reflect that Owen L. Knowlton appeared for him at the hearing on April 25 at which time the case was continued until May 2, 1979. On May 1, 1979, a notice of substitution of counsel was filed with the court, stating that the firm of Rapaich and Knutson had been retained by Bearshield. No hearing was had on May 2, 1979. Counsel filed Bearshield's amended application for post-conviction relief and motion for a change of judge on May 18, 1979. The first notice of hearing appears to have been served upon Bearshield or his counsel on May 30, 1979—after Bearshield's motion for a change of judge was filed. This notice was of a motion to strike Bearshield's amended petition for post-conviction relief and it stated that the motion would be heard on June 6, 1979. Again, however, it appears that no hearing was held on the date scheduled. A hearing was finally held on June 13, 1979, for which no notice appears in the record. It was at this hearing that the court preliminarily heard all pending motions.

1. I.C.R. 25 provides that "[t]he grounds for the disqualification of judges in any criminal action shall be as prescribed for the disqualification of judges in civil actions as set forth in the Idaho Rules of Civil Procedure."

In denying Bearshield's motion for disqualification, the trial court did not rule that the motion had not been filed within the five-day time limit set forth in I.R.C.P. 40(d)(1), nor did the State urge the court to do so. (The State made no response to Bearshield's motion.) In fact, it appears that Bearshield was never actually served with notice of a hearing—as is expressly contemplated by the rules—until *after* his motion for change of judge was filed. Under the circumstances of this case, we cannot agree that Bearshield's in-custody, uncounseled appearance before the court on March 20 was a proper substitute for the service required by the rules. Therefore, it would not have been proper for the court to deny Bearshield's motion for a change of judge on the ground that he failed to comply with the time limits set forth in I.R.C.P. 40(d)(1).

Accordingly, we reverse the final judgment, and remand to the district court with directions that the cause be assigned to another judge.

DONALDSON, C.J., and McFADDEN, J. (Retired), concur.

BAKES, Justice, dissenting:

I disagree with the majority's handling of the disqualification issue. The majority notes, quite correctly, that a party is entitled to one automatic disqualification, and then proceeds on the assumption that the motion in the present case was a motion for automatic disqualification. The majority then reverses the trial judge's ruling on the timeliness of the motion. I feel the majority is incorrect in (1) treating this motion as a motion for automatic disqualification, and (2) treating the motion as timely filed.

The defendant filed his *pro se* application for post-conviction relief on August 25, 1977. The prosecutor then filed an answer to the application on September 20, 1977. The defendant filed a "traverse" (which is merely a response to the state's answer) on October 3, 1977. No notice of hearing was filed with any of these documents, although the defendant, in his "traverse", did request that a hearing be set.

On February 15, 1979, the defendant, still *pro se,* filed a motion for leave to supplement his application. Also on February 15, 1979, the defendant filed a motion for appointment of counsel and a motion for production of documents.

On March 20, 1979, the trial judge ordered the case set for hearing, the order reading:

"The petitioner having filed a petition for post conviction relief which petition raises an issue of fact regarding the voluntariness of his plea upon his allegation that he was not afforded effective representation by his attorney;

"IT IS THEREFORE ORDERED that a hearing upon the factual issue be held on Wednesday, the 25th day of April, 1979."

On April 25, 1979, the defendant appeared in court with counsel and asked for and received a continuance. The court ordered the matter continued until May 2, 1979. Substitution of counsel was made on May 1, 1979. Subsequently, on May 18, 1979, the defendant filed his "motion for change of judge," citing I.C.R. 25 and I.R. C.P. 49(d)(2), basing the motion on an affidavit of the defendant which asserted, as the sole grounds therefor, that allegations in the petition for post-conviction relief "may necessitate the calling of said judge as a witness . . . ."

On June 13, 1979, a hearing was held on several motions filed by the defendant, including the "motion for change of judge." The full extent of the discussion on the motion for change of judge is as follows:

"MR. RAPAICH: Please, sir. We would respectfully request that the motion of disqualification be heard first, Your Honor, so that we will have that out of the way one way or the other.

"THE COURT: All right, go right ahead.

"MR. RAPAICH: I think that simply requires nothing more than the ruling by the Court. The body of the motion states the grounds for it.

"THE COURT: Well, the motion wasn't timely made in that the Court certainly has acted in this case from its very incep-

tion and I think the only way the matter could be shown now is by a showing of some actual bias, so the motion is denied."

The majority states that the trial judge treated the motion as calling for an automatic disqualification. There is no support for that in the record. First, the defendant's motion cited only I.C.R. 25 and I.R. C.P. 49(d)(2) (presumably 40(d)(2) since there is no Rule 49(d)(2)). The motion does not ask for an automatic disqualification, but · purports to be a disqualification for cause, which would fall under Rule 40(d)(2). Rule 40(d)(1), which was *not* the basis of the defendant's motion, is the rule which allows for automatic disqualification of a judge, and it reads:

"RULE 40(d)(1). FIRST DISQUALIFICATION OF JUDGE.—In any action in the district court or the magistrates division thereof, any party may disqualify one (1) judge, without cause, by filing a motion of disqualification *which shall not state any grounds* therefore [therefor] *other than this rule of automatic disqualification.* Such motion *must be made not later than 5 days after service of a notice setting the action for trial, pre-trial, or hearing* on the first contested motion, and must be made before any contested proceeding in such action has been submitted for decision to the judge; . . . ." (Emphasis added.)

A reading of the text of that rule makes it clear that the trial judge could not have been treating the motion as one for automatic disqualification. First, the rule provides for automatic disqualification as a matter of right; thus, no actual bias need have been shown. Secondly, the rule specifically states that no grounds need be given. However, the motion for disqualification which the defendant filed was accompanied by an affidavit specifying the grounds, as provided by Rule 40(d)(2). Finally, the rule itself requires that the rule be specifically cited in the motion for disqualification. Here, only I.C.R. 25 and I.R.

C.P. 49(d)(2) (presumably 40(d)(2)) were cited. The majority errs in holding that the defendant's motion was for an automatic disqualification under Rule 40(d)(1).

Regardless of which rule the defendant filed under, 40(d)(1) or 40(d)(2), his motion was not timely filed. Both rules require that such a motion be filed not later than five days after service of a notice of hearing. This case was originally set for hearing on the merits on April 25, 1979, pursuant to order of the court dated March 20, 1979. If defendant was served with that order on March 20, a motion for disqualification should have been filed no later than March 25, 1979. Unfortunately, it is not clear from the record when defendant was served. However, *he did appear with counsel* on April 25, so he did at some time receive notice of that hearing.

In any event, at the April 25, 1979, hearing, the judge, in open court, with the defendant and his counsel present, granted the defendant's counsel's motion for continuance and ordered the hearing reset for May 2, 1979. This was notice to the defendant that the matter had been set for hearing. It is thus clear that under either Rule 40(d)(1) or 40(d)(2) a motion for disqualification should have been filed no later than five days after April 25, 1979, when the court, in the presence of the defendant and his counsel, reset the hearing for May 2, 1979. Five days would have elapsed on April 30, 1979. Since the defendant did not file his motion for change of judge until May 18, 1979, the motion, whether under Rule 40(d)(1) or 40(d)(2), was not timely filed, and the trial judge properly denied it.

SHEPARD, J., concurs.